**UNITED STATES v. CHICAGO, B. & Q. R. CO.\***

No. 10250.

Circuit Court of Appeals, Eighth Circuit.

Feb. 10, 1936.

\*Writ of certiorari denied 56 S. Ct. 957, 80 L. Ed. ——.

John P. Kyle, Sp. Asst. to Atty. Gen. (George F. Sullivan, U. S. Atty., of St. Paul, Minn., on the brief), for the United States.

J. C. James, of Chicago, Ill., and A. C. Scott, of Denver, Colo. (R. B. Scott, of Chicago, Ill., on the brief), for appellee.

Before STONE, BOOTH, and FARIS, Circuit Judges.

FARIS, Circuit Judge.

Appellant brought this action to condemn a floodway easement on and over a part of the right of way and railroad embankment of appellee, which runs along the Mississippi river just west of and up the river from the town of Hastings, Minn. By the construction by the United States of a dam in said river, near Hastings, the waters thereof will be raised at times to a point 699 feet above the Memphis datum, and ordinarily will stand at 696.4 feet above such datum. This will result, when the dam is holding back the contemplated maximum depth of water, in flooding the riverward side of appellee's right of way and railroad embankment to a point about 3.45 feet below the top of the railroad ties.

The area, or acreage of such right of way, which will actually be flooded by the pool formed by the dam, is about 24 acres and involves about four miles of appellee's track, which from a point about one mile up river from Hastings runs along the east bank of the Mississippi river, called hereinafter Mississippi for brevity. For a part of this distance, the track of appellee parallels the track of the Chicago, Milwaukee & St. Paul Railroad, and partly occupies the latter's right of way.

By an Act of Congress approved January 21, 1927 (44 Stat. 1010), appellant was authorized to construct in aid of navigation ten dams on the Mississippi, of which eight are in the so-called "St. Paul District." The dam here involved is one of these. Work thereon was begun in 1929, and at the time of the trial, it had been fully completed, as also had been the raising or reconstruction of numerous culverts and bridges, and the raising of appellee's track, so as to create a freeboard of some 7 feet above the 696.4 feet datum. A negligible amount of riprapping had not been done. At some points of the pool, which contacts with appellee's embankment, the wind-sweep over pool water is some one to two and a half miles wide, north and south, and some seven miles long, east and west.

Appellant brought this action under the provisions of section 591, title 33, U.S.C., 33 U.S.C.A. § 591, by filing its petition for condemnation on June 16, 1930, later, and on May 7, 1931, it amended its petition by limiting the floodway sought, to 699 feet above the Memphis datum and to lands on the riverward side only of appellee's railroad tracks. The court nisi, on September 18, 1930, appointed three commissioners, who after the usual procedure, not herein attacked, reported an award for damages in favor of appellee in the total sum of $280,674.36, together with interest thereon, from July 10, 1931, at the rate of 6 per cent. The date of the commencement of interest seems to be an attempt at averaging the three several orders made by the court, on June 21, 1931, June 24, 1931, and October 6, 1931, ordering appellee to render to appellant possession of the easement; but this is not very important (since not questioned), in view of subsequent proceedings. From the report of these commissioners and the sum of their award, and the items of damages for which appellee was by the commissioners' report awarded compensation, appellant took an appeal to the Federal District

Court for the District of Minnesota. This suit came on for trial in said court in April, 1933. It was tried to a jury, and resulted, after a trial lasting some 75 days, in a verdict on July 11, 1933, for appellee in the sum of $240,000, to which the trial court, in the judgment rendered, added interest in the sum of $33,120. This was interest on the sum found by the jury at 6 per cent. from July 10, 1931, the date (or perhaps, average date) of the orders of court commanding appellee to render possession of the flowage easement to appellant.

From this verdict and judgment, appellant appealed conventionally, save for certain tribulations and vicissitudes, in no wise now and here relevant.

Appellant relies for reversal upon multitudinous, manifold, and, as urged on us, manifest errors, numbering as set out in its assignment of errors precisely fifty. No need arises to fill up space and take time in setting out all of these alleged errors; for learned counsel for appellant, in order perhaps to conserve his own time and space in his brief, has relied on and discussed these alleged errors in his argument in eleven classes, in the form of propositions in his brief. This court may do the like, under the rule in Schnitzer v. United States (C.C.A.) 77 F.(2d) 233, wherein it is said that alleged errors not argued will be deemed waived.

The eleven propositions, so relied on for reversal, and to which it is contended, the court nisi refused to adhere are as follows:

1. Property is not taken unless it is physically invaded, or unless there is such a practical destruction of the use thereof as to amount to an ouster of the possession of the owner.

2. Merely injuring or damaging property is not a taking, nor is incidental or consequential injuries to property a taking.

3. A riparian owner is subject to all the injury not amounting to a taking of his property which may result from the lawful improvement of a navigable river for purposes of navigation in the exercise of the rights given to the United States by the Commerce Clause of the Federal Constitution.

4. Where injury or damage to property can be avoided by protective measures there is no taking.

5. Damages anticipated, feared, or expected to arise in the future over a period of years through the intervention or by force of natural causes, such as silting, wave action, ice action, and saturation, do not constitute a present taking, and are, besides, incidental or consequential and speculative, conjectural, imaginative, uncertain, and remote.

6. Where, as in this case, the Railroad Company is left in the possession, use, and enjoyment of its railroad as before, the measure of damages is the diminution in the value of the Railroad Company's embankment or right of way caused by its joint or concurrent use for flowage by the government.

7. The rule that where part of an entire tract or farm is taken, the owner is entitled to the value of the part taken, and to damages to the remainder, is not applicable, where the owner is left in possession and use of his property, and a joint use by the government for flowage does not interfere therewith, particularly where there are no present damages to the remainder.

8. Conflicting and confusing instructions given to the jury pointed out under assignment of error 9.

9. The theory of damages adopted by the trial court is erroneous.

10. Errors in admitting evidence.

11. Error in entering judgment for the plaintiff for the amount of the verdict, $240,000 and interest, because the verdict is not justified by the evidence, and because the damages are excessive, and not warranted by the facts or law.

We think propositions 1, 2, 3, 5, 6, 7, and 9 having to do, only, with the proper measure of damages in this sort of case, are so far germane that all of them may be discussed together. Propositions 4, 8, and 10 may well be separately treated; while proposition 11 is in so far as it is not ruled by the cases of Ætna Life Insurance Co. v. Ward, 140 U.S. 76, 91, 11 S.Ct. 720, 35 L.Ed. 371, and New York, Lake Erie & W. Railroad Co. v. Winter's Adm'r, 143 U.S. 60, 12 S.Ct. 356, 36 L. Ed. 71, as to lack of power in a federal appellate court to review alleged excessiveness of a verdict, is only a corollary to other propositions and is to be ruled by what is said touching them; particularly, as to the question of what is the true measure of the damages sustained by ap-

pellee and for which it is entitled to be compensated.

So, we think appellant's contentions of alleged error may be boiled down into three questions: (a) For what items of hurts, injuries, and expense is appellee, under the law and facts, entitled to be compensated? (b) Must appellee bear the whole loss and expense of costly protective means where injury can be avoided, or minimized by adopting and using such means? (c) Was error committed by the trial court in the admission of evidence? As said already, proposition 11, supra, is rather clearly a corollary of question (a) hereinabove, as also in fair effect is proposition (b) supra. So after all, there are actually but two questions for discussion.

■ In final analysis, the case really presents but a single question. That question is: What constitutes that "just compensation" which is guaranteed to the owner of private property when that property is taken for public use? See Fifth Amendment, Constitution of the United States. As a foreword, it may be premised that, if well-nigh the unanimous voice of stare decisis shall be heeded, appellee had the right to build its railroad along the bank of the Mississippi, even though a navigable stream, and that in so doing it had the legal right to rely upon the continued maintenance of the natural level, width, and flow thereof. And that the right to increase artificially this level, width, and flow (to the hurt of appellee) beyond that provided by nature, could be obtained by appellant only by the exercise of the sovereign right of eminent domain, and the payment to appellee of just compensation for the damages by it sustained. United States v. Lynah, 188 U.S. 445, 23 S.Ct. 349, 47 L.Ed. 539; United States v. Cress, 243 U.S. 316, 37 S.Ct. 380, 61 L.Ed. 746; Jacobs v. United States (C.C.A.) 45 F. (2d) 34; United States v. Wheeler Township (C.C.A.) 66 F.(2d) 977.

As to the proper measure of damages, appellant takes the very broad position that appellee is entitled to no compensation, save for the fair value of the land actually flooded; that it can recover nothing for damages, to other parts of its roadbed and right of way which are not so flooded, and that it is not entitled to recoupment for the outlay and expense to which it has been put in order to protect its right of way, roadbed, and tracks from the effects of flooding its property, which expense was something more than $312,-000.

Specifically, the question in the court below was whether appellee was entitled to recover as just compensation anything beyond the fair and reasonable value of the twenty-four acres of land actually and permanently flooded. Recovery, to the above extent, is conceded by appellant. Appellee contended below, and now here contends, that to the end that it may have as good a track and as safe a track as it had before condemnation, it became necessary to widen and raise its embankment, to protect against the effects of saturation and wave action, and distortion by ice; to raise its culverts and bridges, in order to avoid silting and consequent flooding and washing out of its bridges and track; and to riprap with rock its embankment to protect against erosion and distortion by waves and ice. And that for these items it is entitled to be compensated, to the end that it may be made whole, and obtain just compensation. Appellant contends contra, and so this is the legal question; simple in statement, but difficult in exposition, presented by the record.

■ It is probable that time was when many of the states of the Union on the matter of condemnation of private property for public use gave damages only when property was actually taken, and for so much as was actually taken, and refused to award compensation in cases wherein such property, or the remainder of the parcel, was only hurt or damaged as a consequence of the actual taking. But long since, recognizing the utter injustice of so narrow a view, amendments to the organic laws, to statutes, and changes in judicial interpretation well-nigh universally, have so changed the rule as now to give compensation for proximate damages to remaining parts of a parcel of land when some part thereof has been actually taken. In short, such change was wrought, by adding to the word "taken" in the provisions of the Constitution, or to the statute, or by judicial interpretation, the words "or damaged."

Many early decisions of numerous state courts, and federal courts as well (Cf. Gibson v. United States, 166 U.S. 269, 17 S.Ct. 578, 41 L.Ed. 996), may, it is probable, be found, in which, in effect it was held that compensation could be recovered only for the fair market value of the land

actually expropriated, and that nothing could be recovered for damages accruing to other lands, or parts of the parcel taken, when such were not actually taken but only damaged, that is, *reduced in value, or use,* by the taking of other portions of the affected parcel.

But this rule was so obviously unjust that it has become outmoded and been discarded practically in all jurisdictions. We think the correct rule is laid down by the able author of Lewis, Eminent Domain (3d Ed.) §§ 686 and 710, as follows:

"When part is taken, just compensation includes damages to the remainder. Upon this point there is entire unanimity of opinion. (Citing cases.) 'The constitutional provision cannot be carried out, in its letter and spirit, by anything short of a just compensation for all the direct damages to the owner of the lot, confined to that lot, occasioned by the taking of his land. The paramount law intends that such owner, so far as that lot is in question, shall be put in as good a condition, pecuniarily, by a just compensation, as he would have been in, if that lot of land had remained entire, as his own property. How much less is that lot and its erections, thereon remaining, worth to the owner, as property to be used or leased or sold the day after the part was taken, to be used for the purpose designed, than the whole lot intact was the day before such taking.' (Citing cases.) In considering damages to the remainder, however, the whole remainder must be taken into account. If part is damaged and part benefited the question will be whether the whole is worth less than before the taking." (Citing cases.)

"When part of a tract is taken the damages are not limited to such as result from the mere severance of title caused by the taking, *but include damages caused by the use of the property for the purpose for which the condemnation is made.* (Citing cases.) *Such use embraces the construction of the work or improvement and the maintenance, use and operation of the same.* Thus in a railroad case it was held proper to consider 'All incidental loss, inconvenience and damages, present and prospective, which may be known, or may reasonably be expected to result from the construction and operation of the road in a legal and proper manner.' (Citing cases.) 'When land is taken, and must be used

for a particular purpose, the reasonable probable consequences of a lawful use, for that purpose must be taken into consideration.' (Citing cases.) 'Where land is required for public purposes, the injury to the owner's adjoining property depends mainly on the character of the undertaking.' (Citing cases.) Similar expressions will be found in the other cases cited and there would seem to be no doubt about the general proposition. * * *" (Italics ours.)

But of course, it is not important, except historically, and so not relevant here, to consider what the discarded rulings were, upon the point. The matter of present importance is to ascertain what the rule is now. We think that ever since the case of United States v. Grizzard, 219 U.S. 180, 31 S.Ct. 162, 163, 55 L.Ed. 165, 31 L.R.A.(N.S.) 1135, at least, and probably long before (Cf. Pumpelly v. Green Bay & M. Co., 13 Wall. 166, 20 L.Ed. 557; Bauman v. Ross, 167 U.S. 548, loc. cit. 574, 17 S.Ct. 966, 976, 42 L.Ed. 270, and United States v. Welch, 217 U.S. 333, 30 S.Ct. 527, 54 L.Ed. 787, 28 L.R.A.(N.S.) 385, 19 Ann.Cas. 680), the rule in the federal courts has been in fair accord with the above-quoted language from Mr. Lewis.

For the identical principle, now found in the recent liberalized views of what constitutes "just compensation," was long ago, in the Bauman Case, supra, laid down thus: "The just compensation required by the constitution to be made to the owner is to be measured by the loss caused to him by the appropriation. He is entitled to receive the value of what he has been deprived of, and no more. To award him less would be unjust to him; to award him more would be unjust to the public."

In the Grizzard Case, supra, as also in the Welch Case, supra, it was held that the value of an easement of access subservient to the dominant estate, a part of which latter was actually taken, which easement was destroyed by being flooded by a government dam, built in the interest of navigation in a navigable stream, was a proper item of damages for which the United States should pay compensation to the owner of the dominant estate. Specifically, in the Grizzard Case, supra, the simple facts were that the United States had caused to be constructed in aid of navigation, in the Kentucky river, a dam, which backed up the water of Tates creek, a tributary of Kentucky river, thus caus-

ing the waters of Tates creek to overflow and permanently flood some seven acres of Grizzard's land and moreover destroying an easement of access, owned by Grizzard, to a public road. It was held that Grizzard could recover not alone for the fair market value of the seven acres of land actually flooded, but also damages for the easement of access which was destroyed. In the course of discussion, the court said among other things this: "The 'just compensation' thus guaranteed [by the constitution] obviously requires that the recompense to the owner for the loss caused to him by the taking of a part of a parcel, or single tract of land, shall be measured by the loss resulting to him from the appropriation. If, as the court below found, the flooding and taking of a part of the plaintiff's farm has depreciated the usefulness and value of the remainder, the owner is not justly compensated by paying for only that actually appropriated, and leaving him uncompensated for the depreciation over benefits to that which remains. In recognition of this principle of justice it is required that regard be had to the effect of the appropriation of a part of a single parcel upon the remaining interest of the owner, by taking into account both the benefits which accrue and the *depreciation which results to the remainder in its use and value.*" See, also, Sharp v. United States, 191 U.S. 341, 354, 24 S.Ct. 114, 48 L.Ed. 211; United States v. Welch, 217 U.S. 333, 30 S.Ct. 527, 54 L.Ed. 787, 28 L.R.A.(N.S.) 385, 19 Ann.Cas. · 680; Bauman v. Ross, 167 U.S. 548, 574, 17 S. Ct. 966, 42 L.Ed. 270; United States v. Wheeler Township (C.C.A.) 66 F.(2d) 977. (Italics ours.)

So far as we can find, there has been "neither change nor shadow of turning" by the Supreme Court of the United States from the above-quoted broad enunciation touching what damages are compensable *in a condemnation suit by the United States* for a flowage easement, over lands flooded by a dam constructed in the interest of navigation. It must of course be conceded that neither the Grizzard Case, supra, nor any other which we have cited above, includes as a matter up for judgment, all of the specific items of resulting damages involved in the case at bar. But it is clear that since this is a condemnation action, such items as the effect of saturation, waves, and ice on the roadbed, track, and right of way of appellee, and of silting and backwater on culverts and bridges and track, must be compensated for in this action, if at all; for upon these phases of alleged damages the judgment here is a final adjudication.

■ Clearly, the Grizzard Case effectually disposes of the broad contention of appellant that compensation here can be awarded only for the fair market value (*if in fact, it has any such value*) of the strip of right of way and embankment about four miles long and about 50 feet wide, actually taken by permanent flooding. In the light of the present well-settled law, it is difficult to understand the basis for the broad contention here made; unless it arises from a confusion touching what are so-called consequential damages, as contradistinguished from direct or proximate damages. There can be little doubt that numerous earlier cases—and some more recent—are based upon the notion that liability vel non, for compensation is to be tested by whether the damage arising, actually accrues consequentially, or proximately. Ordinarily, "consequential damages" are those which do not arise as an immediate, natural, and probable result of the act done, but arise from the interposition of an additional cause, without which the act done would have produced no harmful result; while "proximate damages" are those which accrue directly and in natural sequence, and as a specific (hurtful) result from the act done, without the intervention of an independent cause.

It is not necessary to consider, or rule, whether the damages dealt with in the cases of Christman v. United States (C.C. A.) 74 F.(2d) 112, Jackson v. United States, 230 U.S. 1, 33 S.Ct. 1011, 57 L.Ed. 1363, and Sanguinetti v. United States, 264 U.S. 146, 44 S.Ct. 264, 68 L.Ed. 608, do or do not fall precisely within the fairly well-settled definition of consequential damages; for there were in each of these cases, as will be noted in the course of the discussion, so many other questions, which may have been controlling, that the precise nature of the hurt therein is wellnigh irrelevant. But obviously, confusion is found in the cases, and this confusion has seemingly misled learned counsel for appellant. This confusion comes, we think, from a failure to distinguish as to the origin of the independent cause. If the latter arises from the act of another person and so could have been obviated or prevented, or from natural causes acting abnormally, e. g. acts of God, damages aris-

ing from the original act are not recoverable, for they are consequential merely, and not proximate. But if the hurtful result shall arise from the original act done, perforce, or plus the normal operation of well known, uncontrollable and immutable laws of physics and natural forces, we are incapable of either following or agreeing to the distinction.

It is known that the wind blows; that in certain latitudes and at a certain temperature ice forms, and later melts when the temperature rises; that water will saturate and soften the soil; that flowing streams carry silt, the amounts whereof vary as the square of the velocity, and when the velocity decreases the silt is deposited on the bed of the stream. None of these things was due to the act of any person, nor can any of them be prevented by any reasonable human means. It is merely nature acting as it always has, and always will act. It seems to us that when a given act is such as to put in force a normal law of nature, which in conjunction with the original act done, produces a harmful result, such result is necessarily a proximate cause of the act done. If this is not so, it is difficult to envision any instance of proximate cause; for man does nothing, he has never done anything, nor will he ever do anything, except move physical objects and then permit nature to take its course. If these things were not in contemplation of the dam builder, how can it be said then that the dam caused the pool. Man made the pool, but nature filled it with water, because nature makes water run downhill, and pile up when it meets an obstacle to its downward flow.

There is in the record substantial evidence of *"depreciation in value and use,"* by reason of the effect on appellee's track, embankment, culverts, and bridges, of ice, waves, saturation, and silting. That all of these are the natural and normal and therefore direct, results from the creation of the pool seems plain. That their presence resulted in "depreciation in value and use" is abundantly shown by the great weight of the evidence, is also plain. It is also fairly clear and likewise shown by the great weight of the evidence that absent expensive measures of protection, which were taken by appellee, the effect of these natural forces, brought into existence by building the dam, would have resulted in destroying in value and use some four miles of appellee's railroad. These con-

siderations, it seems to us, bring the case obviously within the general language used in the Grizzard Case and the Wheeler Township Case, both supra, and if such hurts are not compensable, then grave injustice has been done to appellee. True, cases are cited by appellant wherein the construction of the dam only slightly increased a long existing condition of temporary floods from freshets, and wherein protective measures were inexpensive, and so it was held that no recovery could be had. But it will be found that in all of these cases, the facts present differ radically from those in the case at bar. Unless specific items of damages present here are compensable, then this case is wholly out of line with the principles of fair and just compensation laid down by this court and by the Supreme Court in cases too numerous to mention. See Brown v. United States, 263 U.S. 78, 81, 44 S.Ct. 92, 68 L.Ed. 171; Olson v. United States, 292 U.S. 246, 254, 54 S.Ct. 704, 78 L.Ed. 1236; United States v. Nahant (C.C.A.) 153 F. 520, 542; United States v. Kelly, 243 U.S. 316, 37 S.Ct. 380, 61 L.Ed. 746; United States v. Wheeler Township, supra; Bauman v. Ross, 167 U.S. 548, loc. cit. 574, 17 S.Ct. 966, 42 L.Ed. 270; United States v. Grizzard, supra; United States v. Welch, supra; 10 R.C.L., 153, 155; Hurley v. Kincaid, 285 U.S. 95, 52 S.Ct. 267, 76 L.Ed. 637; United States v. Cress, 243 U.S. 316, 37 S.Ct. 380, 61 L.Ed. 746.

We do not think any of the cases relied on by appellant support the contention of its counsel as above discussed. The cases of Sanguinetti v. United States, 264 U.S. 146, 44 S.Ct. 264, 68 L.Ed. 608; Manigault v. Springs, 199 U.S. 473, 26 S.Ct. 127, 50 L.Ed. 274, and Christman v. United States (C.C.A.) 74 F.(2d) 112, are fair types of cases strongly relied on by appellant to uphold its contention that the damages from ice, wind, saturation, and silt, are merely consequential and not proximate damages. In our opinion the above cases are not in point here. Many cases are to be found holding that no damages can be recovered against the United States in an action under the Tucker Act (28 U.S. C.A. § 41(20) when no part of the land of plaintiff is actually touched, or actually taken. These do not apply here, because part of appellee's land, as is conceded, is actually taken and this is an action for condemnation and not for a tort, as are many of the cases cited by appellant.

Here, as in the case of United States v. Wheeler Township (C.C.A.) 66 F.(2d) 977, decided by this court, the property of appellee taken in this action had no market value and hardly could it be used for any purpose by others. In such situation it was said in the above case, 66 F.(2d) 977, at page 984, this: "When we come to the method of ascertaining the amount of compensation—the measure of damages or compensation—we encounter the peculiarities of this situation. We have a safe starting point in the above fundamental legal proposition that the township must be made whole from money loss. When the ordinary measure of loss (decrease in actual or assumed 'market value') cannot be applied, as here, then 'whatever is necessary to be considered in order to determine what is an equivalent for the appropriation of private property is germane to the question of compensation.' Winona & St. Peter R. Co. v. Denman, 10 Minn. 267 (Gil. 208), and see Monongahela Nav. Co. v. U. S., 148 U. S. 312, 328, [338], 13 S.Ct. 622, 37 L.Ed. 463. Here we must be guided by this record as to what money loss will fall upon the township because of this condemnation."

In the cases of Jackson v. United States, 230 U.S. 1, 33 S.Ct. 1011, 57 L.Ed. 1363; Christman v. United States (C.C.A.) 74 F.(2d) 112; Sanguinetti v. United States, 264 U.S. 146, 44 S.Ct. 264, 68 L.Ed. 608; and Bedford v. United States, 192 U.S. 217, 24 S.Ct. 238, 48 L.Ed. 414, all largely relied on by appellant, the facts up for judgment seem to us to be easily distinguishable from those involved in the case at bar. All of the above cases were actions under the Tucker Act. In each of them, the courts held that the damages arising were consequential and not proximate, and recovery was denied. In neither of them was there any physical taking of any part of the lands of the plaintiffs therein.

In the Jackson Case, supra, the United States had constructed, or aided in the construction of, certain levees on the west side of the Mississippi. These levees, by constricting the channel, raised the height of the river and caused a flooding, or an increased flooding of plaintiff's land, which lay on the east side of the river. The Supreme Court held that such damages were consequential, merely, and not proximate, and so recovery was denied. In the Bed-

ford Case, supra, the United States, in aid of navigation, and to prevent erosion, placed revetment on the bank of the river. This revetment changed the flow direction of the current, and so directed this flow as to cause erosion of plaintiff's lands, and in the course of a few years (perhaps, by a caving of plaintiff's high protecting bank) caused his lands to be overflowed and greatly damaged. This was held to be a consequential, and not a proximate, result of the act done, and plaintiff was denied recovery.

In the Christman Case, supra, plaintiff therein owned a farm abutting on a certain nonnavigable tributary of the Ohio river. The United States raised a dam in the latter river, that is, increased the height thereof, in such wise as to cause the water to back up the tributary, and produce an increased, but intermittent flooding of the plaintiff's land. This flooding was caused by the joint action of freshets coming down the tributary and meeting the backwater produced by the dam in the Ohio river. The court denied recovery to plaintiff on the ground that the damages accrued consequentially and not proximately. The case is of value here (because it was a Tucker Act case) only upon the point of what some courts have said constitute consequential damages; since there were both questions of fact and of jurisdiction involved in the case; largely it rode off on the latter questions.

Moreover, in the Christman Case, supra, the flooding which damaged the land of plaintiff therein was intermittent, and arose when freshets occurred on the tributary of the Ohio river, on which tributary plaintiff's land lay. It was said that such damages were consequential and not proximate. They were therefore to be allocated to the category of negligence and were torts and the Tucker Act was not applicable to them. This for the reason that the Tucker Act requires the presence of a contract express or implied. A similar distinction is found in the case of Tempel v. United States, 248 U.S. 121, 39 S.Ct. 56, 63 L.Ed. 162, wherein it was held that there was no implied contract to pay for damages arising from the dredging of a part of the mainland of the Chicago river (belonging to plaintiff, Tempel) when, because it had already been partly dredged away by private persons, the officers of the United States in charge of the work were ignorant of the fact that the land dredged

was a part of the mainland and belonged to Tempel.

The case of Sanguinetti v. United States, 264 U.S. 146, 44 S.Ct. 264, 68 L. Ed. 608, above briefly referred to, was likewise a Tucker Act case, wherein, in principle, the facts are similar to those in the case of Jackson v. United States, supra. It was held that the officers of the United States were not bound to foresee that the construction of a levee along one side of a stream would, in time of unusual high water, flood and damage lands on the opposite side of such stream. Hence no implied contract to pay for such damages arose, and so no relief could be afforded plaintiff therein, by his action in a federal district court.

It seems clear, therefore, that all of the cases called to our attention and stressed by appellant fall into one or the other of two categories: First, cases arising under the Tucker Act, wherein, by reason of lack of jurisdiction, and lack of an *actual* taking, no consideration of "just compensation" could be given; or, second, they arose prior to a clearly apparent liberalization of the nature of what constitutes a taking of property for public use. As already forecast, to the word "*taking*" there has now been added by almost unanimous decision, bottomed on changes in the organic law, or by statutes, or by judicial interpretation in the later cases, the words "or damaged." This modern trend, which clearly comports with fairness and justice, and without which that *just compensation* guaranteed by the Constitution cannot be accomplished, is plainly referred to and conceded by the Supreme Court in the very late case of Jacobs v. United States, 290 U.S. 13, at page 18, 54 S.Ct. 26, 28, 78 L.Ed. 142, 96 A.L.R. 1, wherein it is said: "Suits brought to enforce the constitutional right to just compensation *are governed by the later decisions* which are directly in point." (Italics ours.) We think it may be said with confident accuracy that in no recent case for condemnation has the restricted notion herein urged by appellant been held, touching what is included in that "just compensation" which is guaranteed by the organic law of the land.

It would seem in the light of the case of Jacobs v. United States, 290 U.S. 13, 54 S.Ct. 26, 78 L.Ed. 142, 96 A.L.R. 1, that the controlling factors compelling decision in the Christman Case, supra, must largely have rested on the facts and the procedure therein; since it seems somewhat out of accord with Jacobs v. United States (C.C.A.) 45 F.(2d) 34, and Same Case, 290 U.S. 13, 54 S.Ct. 26, 78 L.Ed. 142, 96 A.L.R. 1.

We are impelled to the conclusion that the elements of damage as to ice and wave action, saturation, and silting, and expense of prevention, and protection, submitted to the jury were proper and so exceptions to instructions embodying them were not well taken. True, the factual existence of all of them was strongly contradicted by witnesses for appellant, and as strongly contended for by witnesses for appellee. But all this, as also the alleged excessiveness of the verdict, was for the jury, or the trial court, and an appellate court is not concerned with it. Ætna Life Ins. Co. v. Ward, 140 U.S. 76, 91, 11 S. Ct. 720, 35 L.Ed. 371; Booth v. Gilbert (C.C.A.) 79 F.(2d) 790; New York, Lake Erie & W. Railroad Co. v. Winter's Adm'r, 143 U.S. 60, 12 S.Ct. 356, 36 L.Ed. 71. The contention of appellant, now here made, that the instructions were conflicting and therefore confusing, need not be noticed, because no such objection or exception to them was made on the trial; for an exception furnishes no basis for reversal upon any other ground except those specifically called to the attention of the trial court. United States v. U. S. Fidelity & Guaranty Co., 236 U.S. 512, 35 S.Ct. 298, 59 L.Ed. 696.

As already said, numerous exceptions were taken to the admissibility of evidence offered by appellee. For the most part, not only was this evidence directed toward proof of items of damages, already discussed and deemed proximate, but appellant makes mention of but two instances in its argument. All others, for the purpose of appellate review, must be deemed waived. Schnitzer v. United States, supra; Squibb & Sons v. Mallinckrodt Chemical Works (C.C.A.) 69 F.(2d) 685; I. T. S. Rubber Co. v. Essex Rubber Co., 272 U.S. 429, 47 S.Ct. 136, 71 L.Ed. 335. It is even to be doubted whether these two exceptions to the admissibility of evidence and the argument thereon are sufficient to properly preserve the point for review.

In effect, the only argument presented touching error in the admission of evidence consists in a mere restatement of the errors alleged. In the last analysis, all that is said is general and not specific. Coun-

sel for appellant merely reiterates generally that evidence, as to ice and wave action, silting and damages to culverts and bridges, was not admissible, and that evidence as to the cost of obtaining a new entrance into St. Paul was erroneous. And that evidence, as to the cost of maintenance of the track and riprap for a period of years in the future, was not admissible for that it was speculative and uncertain; since there was no present expenditure and since there might never be any. But ex gratia, we examine them.

 The questions as to damages for ice, wind, and wave action and silting, and their effect on the appellee's track, bridges, and culverts, have already been considered. If, as we doubt, any objection as to the competency of evidence admitted to prove cost of a new entrance into St. Paul, has been under the rules and the case of Schnitzer v. United States, supra, properly preserved and not waived by a failure to argue it, then we think the objection is met and disposed of by the case of United States v. River Rouge, etc., Co. (C.C.A.) 285 F. 111, and by what was said by this court in the case of United States v. Wheeler Township, supra (C.C.A.) 66 F. (2d) 977, at page 984. Therein, upon a point which we think is wholly germane in principle, we said this: "Both the Fifth Amendment and article 1, § 13 of the Constitution of the state of Minnesota require 'just compensation.' This means that the condemnee must · be made whole for what is taken from him. U. S. v. Grizzard, 219 U.S. 180, 184, 31 S.Ct. 162, 55 L.Ed. 165, 31 L.R.A. (N.S.) 1135; Monongahela Nav. Co. v. U. S., 148 U. S. 312, 326, 328, 13 S.Ct. 622, 37 L.Ed. 463; Winona & St. Peter R. Co. v. Denman, 10 Minn. 267 (Gil. 208). What is here taken from the township? It is the right to maintain its roads at the natural levels of the lake. It had that right up to this condemnation."

In the case at bar, as in the situation involved in the Wheeler Township Case, supra, the facts and circumstances are unique. There, as here, the actual land involved had little, if any, market value. One was a public highway, and the other is often so denominated. Both are for public use; though one was free, and the other used in public carriage for hire. One must be kept up and maintained in a safe condition, because the statute so required; the other must be operated and maintained in a safe condition, because statutes and incumbent duties as a common carrier so prescribed. And the violation of these duties would spell indirectly the utter destruction of the property of the appellee.

 Whether evidence as to the added expense of track maintenance for a period of six years, and evidence as to the probable expense of riprapping along appellee's track below the dam was admissible, present a more serious question. But the additional cost of track maintenance was put by the witness at $150 a mile for the period named, or in all about $600. While the reception of this evidence may well have constituted technical error, it was harmless in the light of the facts that the verdict was for $240,000; that the total cost of the work · actually done by appellee was more than $312,000; that the finding of the commissioners in favor of appellee was more than $280,000; *and that it took seventy-five days to try the case.* This last consideration has been held to obviate reversal, when the amount involved was, as here negligible, in comparison with the whole amount in controversy, and with the expense of another trial. United States v. River Rouge Improvement Co. (C.C.A.) 285 F. 111, loc. cit. 117. So, in this situation resort may be had to the statute of jeofails (section 391, title 28, U.S.C., 28 U.S.C.A. § 391), and the error be proclaimed harmless in view of the situation we have described above.

 As to alleged error in admitting evidence as to the necessity of riprapping appellee's track below the dam, the evidence disclosed that appellant was seeking to condemn some 200 linear feet of appellee's embankment at that place. In the light of the conclusion we are constrained to reach in the case, we see no reason why the admission of this evidence was error; and appellant's counsel neither points out any reason, nor cites any case, for the faith that is in him. Moreover, the witness gave no figures as to the cost of this work, so far as the assignment of this alleged error discloses; nor have we found in the record any evidence as to this cost. While this would only serve as another reason for refusing to reverse on this ground, obviously, if the cost of the riprapping is not shown, the evidence could not have harmed a case wherein it appeared that appellee had put in numerous improvements and betterments, for which, be-

cause they were such, no charge had been made.

It follows, from what has been said, that the case should be affirmed, without costs, which accordingly we order.