**CHICAGO, M., ST. P. & P. R. CO. et al. v. CHICAGO, R. I. & P. RY. CO. et al.**

**CHICAGO, R. I. & P. RY. CO. et al. v. CHICAGO, M., ST. P. & P. R. CO. et al.**

Nos. 12586, 12587.

Circuit Court of Appeals, Eighth Circuit.

Oct. 11, 1943.

Rehearing Denied Nov. 4, 1943.

Writ of Certiorari Denied Jan. 10, 1944.

See 64 S.Ct. 437.

Willis J. O'Brien, of Des Moines, Iowa (Hughes, O'Brien & Hughes, of Des Moines, Iowa, M. L. Bluhm, of Chicago, Ill., and W. B. Sloan, of Des Moines, Iowa, on the brief), for Chicago, M., St. P. & P. R. Co., et al.

A. B. Howland, of Des Moines, Iowa (Bruce E. Dwinell of Chicago, Ill., and J. G. Gamble, of Des Moines, Iowa, on the brief), for Chicago, Rock Island & Pacific Ry. Co., et al.

Before SANBORN and RIDDICK, Circuit Judges, and LEMLEY, District Judge.

RIDDICK, Circuit Judge.

These appeals involve a controversy between the trustees in bankruptcy of The Chicago, Rock Island and Pacific Railway Company, the Company, and certain associated interests, and the trustees in bankruptcy of the Chicago, Milwaukee, St. Paul and Pacific Railroad Company, the Company, and associated interests over the ownership of a fund deposited in the registry of the United States District Court for the Southern District of Iowa in condemnation proceedings in that court in which the United States condemned a perpetual easement to overflow along the property of The Chicago, Rock Island and Pacific Railway Company, including the company's right of way, embankment, and other structures constituting its continuous line of railroad on the right bank of the Mississippi River in Scott and Muscatine Counties in the State of Iowa, between Mississippi River Lock and Dam No. 16 upstream to the Mississippi River Lock and Dam No. 15. The parties to these appeals were the parties defendant in the condemnation proceeding, the petition in which alleged that the Chicago, Milwaukee, St. Paul and Pacific Railroad Company, it trustees, and associated interests claimed to have some right or title in and to the property of The Chicago, Rock Island and Pacific Railway Company described in the petition, by virtue of a certain contract between the railroad companies, the purport of which is discussed later in this opinion.

By appropriate proceedings in the condemnation action, the just compensation for the taking of the easement condemned by

the United States was determined to be the sum of $127,539, and this sum was deposited in the registry of the court for distribution to the party or parties entitled thereto. For convenience the parties to these appeals are referred to in this opinion as the Rock Island and the St. Paul.

At the trial in the district court the Rock Island claimed the whole of the fund in the registry of the court on the ground that it was the exclusive owner of all of the properties taken or damaged as a result of the easement acquired by the Government in the condemnation proceeding. The St. Paul claimed the right to share in the distribution of the fund in the registry of the court on the ground that it had some estate or title in the Rock Island property which has been taken by the United States, and for which it should be compensated to the extent of its interest taken. The district court concluded that the St. Paul, by virtue of the contract between it and the Rock Island, was the owner of an easement in the use of the tracks of the Rock Island upon the property condemned, which was, in the words of the court, "a trackage right or easement for the use of the tracks of the Rock Island." But the court also found that the St. Paul had introduced no evidence tending to show any actual damage to its right in the use of the properties of the Rock Island by virtue of the taking of the easement in question, and had sustained only theoretical damage as the result of the taking; that, as the legal owner and holder of the title to the property condemned, the Rock Island had been damaged in the amount of the award paid into the court, subject only to the nominal and theoretical damage to the St. Paul's right to use the property in the sum of $100. Findings of fact and conclusions of law to the effect stated were made, and a decree in conformity therewith was entered by the district court. The St. Paul appeals from the judgment of the court holding that the evidence failed to show actual damage to its interest in the property condemned, and the Rock Island appeals from the judgment of the court holding that the St. Paul had any interest or title in the property taken. These conflicting claims present the issue here.

The record discloses that in August, 1901, the St. Paul and the Rock Island entered into a written contract concerning the joint use by the two companies of that part of the Rock Island railroad line between Davenport and Muscatine, Iowa, which is the Rock Island property subject to the easement acquired by the United States in the condemnation proceedings. The contract is long and expressed in much detail, but the part of it material to the decision here may be briefly stated. After reciting the Rock Island's ownership of the railroad line and the wish of the St. Paul to acquire the right to use it, the contract provided that the Rock Island "hereby grants to the St. Paul Company for a term of ninety-nine (99) years from and after the 30th day of June, A.D. 1903, the full, joint and equal use, in common with the Rock Island Company and such other company or companies as the Rock Island Company shall at any time permit to use the same or any part thereof, and subject to the conditions, limitations and restrictions in these articles set forth," of that portion of the Rock Island lines subject to the contract, including in the description of the railroad property to be jointly used by the parties all appurtenant property, and all improvements and betterments thereof and additions thereto. The St. Paul was granted the right to haul over the lines of the Rock Island trains of one other railroad company and the right, subject to the consent of the Western Union Telegraph Company, to construct and operate for its sole use a wire or wires on the telegraph poles of the Rock Island. The Rock Island agreed to maintain and keep in good condition and repair the railway line and facilities, the joint use of which was granted to the St. Paul; and to employ all necessary agents and servants and to require them to give the same care and attention to the business of the St. Paul as they gave to the business of the Rock Island. It also agreed at its own expense to double track the line of railroad, the use of which was granted the St. Paul, and, upon demand of the St. Paul, to construct any other additional facility which the St. Paul deemed necessary to the operation of its business, or to permit the St. Paul to construct such additional facilities at its own expense and to retain title thereto, with an option in the Rock Island to purchase.

The contract further provided that the Rock Island should make all rules and regulations for the operation of the railroad to be jointly used by the parties, and that all trains of either company should move under and in accordance with the orders of the superintendent and train dispatchers of the Rock Island. Except en-

ginemen and trainmen, all employees of the Rock Island engaged in maintaining and operating the Rock Island line were declared by the contract to be joint employees of both parties.

For the use of the Rock Island lines acquired under the contract, the St. Paul agreed to pay annually a sum equal to two per centum of an agreed valuation of the Rock Island property; a stated portion of the taxes and assessments levied against the Rock Island; a sum equal to two per centum of the cost of betterments and additions made by the Rock Island for the joint use of both parties; and a proportion of the cost of maintaining the Rock Island property, determined by the ratio which the number of miles run by trains of the St. Paul should bear to the number of miles run by trains of both companies; and, in addition, a like proportion of the salaries of certain employees engaged in the transaction of the business of both parties.

Upon default of the St. Paul in any of its obligations, the Rock Island was given the right to terminate the contract. After ten years from the date of the contract the St. Paul was given the unrestricted right to withdraw from the contract by giving the Rock Island five years notice in writing of its decision to withdraw. The St. Paul was denied the right, without the written consent of the Rock Island, to sell or assign the contract or any of the rights and privileges granted the St. Paul by the contract, or to permit any other company or companies to share in such rights and privileges.

We conclude that the St. Paul did not acquire any title to or estate in the properties of the Rock Island which were the subject of the contract between the parties, and we think this conclusion is supported by the decision of the Supreme Court of the United States in Union Pacific Ry. Co. v. Chicago, R. I. & P. R. Co., and Union Pacific R. Co. v. Chicago, M. & St. P. R. Co., 163 U.S. 564, 16 S.Ct. 1173, 41 L.Ed. 265, and the decision of the Supreme Court of Illinois in the case of Englewood Connecting R. Co. v. Chicago & E. I. R. Co., 117 Ill. 611, 6 N.E. 684, 687. In each of the cases referred to, one railroad company acquired by contract the right to use the tracks and facilities of another, and in each there was presented the question of the estate or title acquired by the railroad, granted the right of user, in property of the railroad owning the tracks and facilities, the use of which was granted. In both cases the contract involved was entitled a lease, and in the Illinois case it was executed with the formality of a conveyance of an interest in real property and placed of record. In the Union Pacific case the contract recited the grant of possession of the Union Pacific tracks and facilities, as well as the right to their use. In the Illinois case the contract recited that the owner railroad had granted to the other party "and by these presents does grant, demise, and lease" the right of using, and running locomotives and trains over, the tracks of the owner railroad. The Union Pacific Company, as owner of the railroad facilities involved in its contract, attempted to avoid the contract upon the ground that it constituted a conveyance of an interest in its railroad property, and, as such, was violative of its franchise and beyond its power to make. The Supreme Court of the United States denied this contention, affirming the decision of this circuit in 51 F. 309. The court was of the opinion that the contract conveyed no interest or estate in the Union Pacific property, but merely granted a permissive right of user which was not violative of the Union Pacific's franchise. In the Illinois case the court reached the conclusion that the lessee railroad in the contract before it acquired no estate in the property of the lessor railroad which entitled it to be heard in a condemnation proceeding against the lessor railroad for the taking of an easement across its tracks. We reach the same conclusion here.

The contract involved here begins with a recognition of full and complete ownership by the Rock Island of the railroad facilities involved. It neither grants nor purports to grant any right of possession of those properties to the St. Paul. On the other hand, by the express terms of the contract, the Rock Island retained full control over its tracks and facilities, as well as over the operations of trains of the St. Paul when using the tracks and facilities in question. All of the obligations of ownership remained with the Rock Island. The burden of maintenance, and of compliance with all of the rules and regulations imposed by law for the safety of operation, and the obligation for the payment of all taxes and assessments upon the property jointly used, were retained by the Rock Island. The agreement between the parties was in form

a contract and not a conveyance of an interest or estate in realty or other property. The mere fact that the sum which the St. Paul was required to pay for the use of the Rock Island facilities was measured by a proportion of the expense of the Rock Island in maintaining and operating the railroad facilities involved, and in discharging its obligations in this respect to public authority is not sufficient to convert the agreement between the parties from a contract for a limited use of the Rock Island property into a conveyance of an estate in it.

While the easement taken by the United States in the condemnation proceedings extended from Dam No. 16 to Dam No. 15 on the Mississippi River along the tracks and roadbed of the Rock Island for a distance of approximately 26 miles between Davenport and Muscatine, Iowa, the actual damage to the Rock Island property resulting from the taking was limited to that part of the line within a distance of 23,500 feet upstream from Dam No. 16. The United States and the railroad companies agreed upon the amount of just compensation for the taking of the easement in question, and they used as a measure of this compensation the amount estimated by them to be sufficient to enable the Rock Island to place that part of its property actually damaged by the taking of the flowage easement in a condition as safe and satisfactory as it was before the taking of the easement. The St. Paul contends that since under its contract for the use of the Rock Island properties it is required to pay annually a proportion of the cost of the maintenance, it is entitled to share in the award in the condemnation proceeding. The argument is that the award in the condemnation proceeding was made specifically to cover the cost of maintenance and remedial work made necessary by the taking of the easement. As a matter of law, however, the award was made as just compensation for the taking of the railroad property by the United States in a condemnation proceeding. The ownership of the award can not be made to depend upon the measure adopted for the calculation of the amount of just compensation. Nor can the St. Paul base any claim for a share in the amount awarded the Rock Island for the taking of its property upon the failure of the Rock Island to expend the award in restoring its track to the condition in which it was before the taking, nor upon the assertion, if true, that the Rock Island will pocket the award and charge the St. Paul under the contract for expenditures which it may make in the future maintenance of its road. Questions concerning the rights and liabilities of the parties, under the contract between them, in the restoration and maintenance of the Rock Island properties are not involved in this proceeding and on them we express no opinion. Any damage which the St. Paul may sustain by reason of an increase in its expenses under the contract with the Rock Island is not the proximate result of the taking of the Government's easement along the Rock Island property. Such damage to the St. Paul, if any, is chargeable to the terms of the contract between the parties and is not recoverable in a condemnation proceeding. United States v. Chicago, B. & Q. R. Co., 8 Cir., 82 F.2d 131, 106 A.L.R. 942.

We think the district court was correct in finding that the evidence failed to show that the St. Paul sustained actual damages as the result of the condemnation proceeding. To what has been said we may add that the United States by the acquisition of the easement to overflow the property of the Rock Island has not taken the contract under which the St. Paul has the right to use the Rock Island property subservient to the easement. The St. Paul is still enjoying the right of use acquired under the contract in all respects as it did before the condemnation proceeding. It has not been ousted from the enjoyment of the use of any of the Rock Island property, nor hindered in the use of any of its own. Under the contract between the roads, which is still in effect and has approximately 60 years of life remaining, the Rock Island is still obligated to maintain its properties for the use which was granted the St. Paul under the contract. The fact that the St. Paul in the contract was granted the right to construct at its own expense and to own certain facilities in addition to those furnished by the Rock Island, and that it has constructed and now owns these facilities on a part of the Rock Island property which is subservient to the easement acquired by the United States is of no significance here, since under the evidence none of the St. Paul facilities were damaged or taken as the result of the acquisition of the easement by the Government, nor were they located upon any part of the Rock Island property which received damage as the result of the Government acquisition.

272

The decree of the district court was erroneous only in so far as it determined that the St. Paul had a sufficient interest in the Rock Island property to justify a participation in the award to the extent of $100. The decree should have provided that the entire award be turned over to the Rock Island. On remand, the district court will modify its decree accordingly, and, as so modified, it will stand affirmed.