**NEW VALLEY CORP., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 94–785C.

United States Court of Federal Claims.

Aug. 30, 2006.

Sarah S. Gold, Proskauer Rose LLP, New York City, NY, attorney of record for plaintiff. Elise A. Yablonski, of counsel.

Doris S. Finnerman, with whom were Assistant Attorney General Peter D. Keisler and Director David M. Cohen, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, DC, for defendant. Scott Barber, Office of the General Counsel, NASA, of counsel.

## OPINION

WIESE, Judge.

In an earlier opinion issued in this case, the court resolved in plaintiff's favor the question of whether Western Union Telegraph Company ("Western Union"), New Valley's principal subsidiary, was entitled to recover contract damages as a result of the National Aeronautics and Space Administration's ("NASA") anticipatory repudiation of a contract promising NASA's "best efforts" to launch Western Union's communications satellite, the Westar VI–S, into earth orbit. *New Valley Corp. v. United States,* 67 Fed. Cl. 277 (2005). Notwithstanding this ruling, plaintiff's right to recover contract damages is once again at issue. Defendant has moved for summary judgment asserting that the damages identified in the court's opinion do not qualify as direct damages but instead constitute consequential damages and lost profits and therefore are not recoverable under the terms of the parties' contract. Plaintiff has cross-moved for summary judgment claiming that it is entitled on the basis of the stipulated facts to recover $43.3 million pursuant to the court's earlier opinion. For the reasons set forth below, the parties' cross-motions are denied.

I.

During the period relevant to this action (1984–1991), Western Union was a corporation in financial distress—a condition brought on by an ever—increasing interest burden arising out of indebtedness undertaken to finance capital expenditures that ultimately failed to produce their expected revenue flow. In an effort to arrest the decline in the company's fortunes, Western Union began to sell off assets, including those comprising the company's communications satellite division, the Westar Division. Included in the Westar

Division assets was the Westar VI–S, a communications satellite built by Western Union at a cost of $32.2 million and acquired by Hughes Communications, Inc., in January 1989 for $20.5 million.[1] At the time Western Union contracted for the construction of the Westar VI–S, it expected to launch that satellite aboard the Space Shuttle pursuant to a contract executed with NASA in 1984. This contract, however, was later disavowed by NASA due in the main to a reevaluation of the nation's launch program precipitated by the loss of the Space Shuttle Challenger in January 1986 and the subsequent decision by President Reagan to forego commercial launches in favor of payloads that either were shuttle-unique or had national security and foreign policy implications.

Western Union eventually went into bankruptcy and following its reemergence from that process brought suit in this court seeking, *inter alia*, damages for NASA's breach of contract. The case went to trial on the issue raised by defendant, namely, that because of Western Union's precarious financial condition, the company would not have been able to perform the contract on the date that performance was scheduled to occur and therefore had no basis for recovery of damages. In support of that argument, defendant relied on the *Restatement (Second) of Contracts* § 254(1) (1981) which declares that "[a] party's duty to pay damages for total breach by repudiation is discharged if it appears after the breach that there would have been a total failure by the injured party to perform his return promise."

We rejected defendant's argument, concluding that section 254 is simply a codification of the general rule requiring a party seeking damages for breach of contract to demonstrate that the breach was the proximate cause of the injury claimed. *New Valley*, 67 Fed.Cl. at 284. That requirement, we noted, was satisfied in the instant case because absent NASA's breach, Western Union's sale of the Westar Division assets would have included the transfer (by assignment) of the satellite launch contract, thereby allowing

Western Union to realize, through such assignment and sale, the market value of that contract. *Id.* Given this fact, we ruled that it was irrelevant whether or not plaintiff had the financial capacity to launch the satellite in its own right because under either scenario "the breach must be seen as the proximate cause of injury to plaintiff." *Id.* We left for later consideration the question of how much more Hughes Communications would have paid for the Westar Division assets had they included a NASA launch contract.

## II.

### A.

Pursuant to the terms of the parties' contract, any award for a breach of contract must be restricted to direct damages and may not include lost profits or other consequential damages. Specifically, under the heading "Limitation of United States Government and Customer Liability," the launch services contract provided:

> [T]he United States Government's liability to the Customer ... whether or not arising as a result of an alleged breach of this Agreement, shall be limited to direct damages only and shall not include any loss of revenue, profits or other indirect or consequential damages.

Defendant maintains that the damages contemplated in the court's earlier opinion constitute consequential damages and lost profits and therefore, based on the language quoted above, are not recoverable under the parties' contract.

In support of this argument, defendant asserts that Western Union did not sell the Westar Division assets because of the breach but rather because it was confronting a liquidity crisis that left it without sufficient funds to satisfy its day-to-day operations and also meet its debt service obligations. Defendant thus maintains that plaintiff's damages cannot be said to flow directly from the breach but are instead the result of a collateral undertaking and therefore constitute consequential damages. More particularly,

---

1. Hughes Communications acquired all of the Westar Division assets, which included three orbiting satellites as well as the Westar VI–S, for approximately $40 million. The portion of the sale price allocated to the Westar VI–S was $20.5 million.

defendant identifies plaintiff's damages claim as a claim for lost profits, *i.e.*, monies that Western Union claims it would have realized had it been able to sell its favorably priced NASA launch contract for its much higher market value.

■■■ We cannot accept this argument. Direct damages, or what are more often referred to as "general damages," 24 Richard A. Lord, *Williston on Contracts* § 64:1, at 11 (4th ed.2002), are damages measured by the loss of the value of the performance promised by the breaching party. In other words, such damages are "based on the value of the very thing to which the plaintiff was entitled ..., they encompass paper losses or unrealized losses, and ... they are determined as of a particular date, usually by market measures." 3 Dan B. Dobbs, *Law of Remedies* § 2.2(3), at 40–41 (2d ed.1993). Consequential damages (also called "special damages"), on the other hand, are those damages that "result as a secondary consequence of the defendant's non-performance," *id.* § 12:4(1), at 62, *i.e.*, they "arise from the interposition of an additional cause, without which the act done would have produced no harmful result," *United States v. Chicago B. & Q.R. Co.*, 82 F.2d 131, 136 (8th Cir.1936). Consequential damages are thus distinguishable from general damages in that rather than being based on the value of the promised performance itself, they are based on the value of some consequence that that performance may produce. Dobbs, *supra* § 12.4(1), at 62.[2]

■■ Consistent with these definitions, we believe that the damages identified in our earlier decision are direct damages rather than consequential damages. Specifically, we described those damages as the additional amount that Hughes Communications "would have paid for the Westar Division assets had they included a NASA launch contract." *New Valley*, 67 Fed.Cl. at 284. In so ruling, we had in mind only one component of the Westar Division assets, namely, the value of the launch contract. As the balance of our opinion makes clear, we expected that value to fall somewhere between the market value of a substitute launch contract (stipulated by the parties to be $31.6 million) and the sale price Western Union reasonably might have expected to receive given its distressed financial position and Hughes Communications' awareness of that condition.

Defendant's assertion that the sale of the Westar Division assets was a collateral undertaking and hence rendered any loss identified with that sale a consequential damage is not correct. The sale of the Westar Division assets was not the cause of the loss claimed. Rather, the cause of that loss was defendant's breach—an event that preceded the sale of the assets by many months. As we noted in our earlier opinion, the sale was simply the focal point of the loss, *i.e.*, the occasion when the market value of the launch contract could have been realized by Western Union had there in fact been no breach. *Id.*

Nor is defendant correct in describing as lost profits the gain that Western Union could have expected to realize from the sale of the launch contract. That gain—the difference between the contract price and the market price (or more specifically, the price Hughes Communications would have been willing to pay)—is synonymous with the very value of the performance for which Western Union had bargained. Such a value, by definition, constitutes general damages rather than lost profits. Accordingly, defendant's motion for summary judgment must fail.

### B.

Where defendant's motion miscategorizes the damages identified in the court's earlier decision, plaintiff's motion miscalculates them. As an initial matter, plaintiff does not limit its damages calculation to the sale value of the launch contract, as our opinion intended, but instead includes damages for the entire loss associated with the sale of the Westar Division assets, including, in particu-

---

**2.** Dobb's *Law of Remedies* provides a useful accounting metaphor that captures the difference between general damages and consequential damages: "General damage awards aim at putting the plaintiff's balance sheet in the position it would have been in upon performance," *id.* § 12.2(3), at 40, whereas "the consequential damages measure emphasizes income or loss, or cash flow, including losses that may result far into the future," *id.* § 12.2(3), at 42.

lar, the $11.7 million difference between the cost to Western Union to build the Westar VI–S satellite and the $20.5 million Hughes Communications in turn paid to purchase it. In addition, plaintiff identifies the difference between plaintiff's contract price and the market price for a substitute launch—stipulated by the parties as $31.6 million—as the value of the launch contract, rather than the difference between the contract price and the price Hughes Communications would have paid, as we earlier contemplated. We cannot endorse either of these positions.

 The diminution in value of the Westar Division assets that we discussed in our earlier opinion was a reference to the launch contract only and not to any related assets whose market value might be dependent upon the availability of a launch contract, such as the Westar VI–S satellite itself. Clearly, a claim for the diminution in the value of the satellite (here, the demand for $11.7 million) is a claim involving a secondary injury traceable to the breach and as such is a claim for consequential damages not recoverable under the parties' contract.

Plaintiff's second point—that we accept the parties' stipulation regarding the market value of a substitute launch contract as the basis for an entry of judgment in its favor—similarly misconstrues the court's view of this case. As framed in our earlier opinion, the upper boundary for the calculation of plaintiff's damages is not the market price for a substitute launch contract (the $31.6 million now claimed) but rather the price Western Union reasonably could have expected to receive from the sale of its launch contract. As we put it then: "The question we must address is how much more Hughes Communications would have paid for the Westar Division assets had they included a NASA launch contract." *Id.*

Implicit in this position is the court's view that market damages are not appropriate where actual damages are ascertainable. Had plaintiff entered into a substitute launch contract, for example, its damages would have been measured by the difference in price between the breached contract and the substitute contract. *Hughes Communications Galaxy, Inc. v. United States,* 271 F.3d 1060, 1066 (Fed.Cir.2001) (citing U.C.C. § 2–712 (1997) (recognizing a buyer's right to damages based on the costs of "cover")). Where, as here, the proof of damages is tied to a hypothetical sale of the launch contract rather than to its replacement, the damages should similarly be calculated by reference to that sale, *i.e.,* the measured difference between the contract price and the price Hughes Communications would have been willing to pay for the NASA contract. For the reasons given, plaintiff's cross-motion for summary judgment must be denied.

## CONCLUSION

For the reasons set forth above and consistent with the court's earlier decision, the parties' cross-motions for summary judgment are denied. The damages issue shall proceed to trial. Accordingly, on or before September 29, 2006, the parties shall file a status report proposing a schedule for pretrial and trial proceedings on this issue.