332 F.2d 679
 UNITED STATES of America, Petitioner-Plaintiff-Appellee,
v.
CERTAIN LAND IN the BOROUGH OF MANHATTAN, CITY, COUNTY AND
STATE OF NEW YORK, and 306 Broadway Realty Corp.,
et al., Defendants-Appellants.
 No. 504, Docket 28942.
 United States Court of Appeals Second Circuit.
 Argued May 27, 1964.
Decided June 2, 1964.
 
 A. Donald Mileur, Dept. of Justice, Washington, D.C., for United States of America.
 Archibald Palmer, New York City, appellant pro se, et al.
 Jacob Fuchsberg, New York City, appellant pro se, et al.
 Sidney Z. Searles, New York City, for owner of 312 Broadway, et al.
 Anthony Romano, New York City, for other interested owners.
 Samuel Goldstein, New York City, for Bartiff Luncheonette, Inc., et al.
 Before LUMBARD, Chief Judge, and WATERMAN and HAYS, Circuit Judges.
 LUMBARD, Chief Judge:
 
 
 1
 On April 30, 1964, by ex parte order of the United States District Court for the Southern District of New York, the United States government condemned certain properties on the west side of Foley Square in New York City for the erection of a United States office building. The defendants, tenants occupying the buildings so taken, appeal from an order of the Southern District which denied their applications for modification of the previous order with respect to the terms and conditions of the government's taking possession, 40 U.S.C. 258a, to stay the government from taking immediate possession and to permit the defendants some time within which to vacate the premises and to find other quarters.
 
 
 2
 Having taken immediate appeals, the tenants applied to us on May 25 for a stay pending hearing of their appeals, and we heard the appeals on May 27, the government having agreed that no action would be taken in the interim, at which time we granted a stay pending our decision.
 
 
 3
 We hold that appeal lies from the district court's denial of the application to restrain the government from taking possession at any time after May 9. The tenants' rights derive from 40 U.S.C. 258a, which provides that 'the court shall have power to fix the time within which and the terms upon which the parties in possession shall be required to surrender possession' to the government. As such, these rights are separable from, yet collateral to, the rights asserted in the main condemnation action. No compelling reason thus exists for deferring appellate review until the entire case has been adjudicated. The occupants' rights would be rendered moot and beyond the power of any court to rectify if they could not be heard at once and before they have been dispossessed. See Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).
 
 
 4
 On April 22 the General Services Administration, under whose supervision the clearing of adjacent land taken in earlier proceedings, see 306 F.2d 439 (2 Cir. 1962), was going forward, directed that all work should cease because examinations and measurements made by architects and engineers over a period of many weeks indicated that four of the eleven buildings involved in the present taking (apparently all that were tested) had settled from 1 3/4 to 2 inches and had suffered lateral movement from 13/16 of an inch to 1 3/8 inches, except that the 16-story building at 320 Broadway had lateral movement of from 3 5/8 inches to 7 3/4 inches. In the view of the government's experts there was serious danger to life, limb and property if all the buildings were not promptly vacated. Eight days later, on April 30, the government commenced this proceeding to condemn the eleven buildings and the land on which they rested. It filed its notices of taking and secured an ex parte order of the district court which granted the government the right to immediate possession of the property.
 
 
 5
 The government next took immediate steps to notify the tenants, and notices were received by them on Monday, May 4, which stated that they must vacate the premises as soon as possible, and in any event no later than midnight, May 9. The tenants thereupon secured orders to show cause why the government should not be stayed from evicting them forthwith, and the matter came on to be heard by the district court on May 11 on affidavits submitted by the government and the tenants.
 
 
 6
 On behalf of the government an affidavit was submitted by Alfred Easton Poor, an architect, senior partner of the Office of Alfred Easton Poor and the coordinating partner of the joint venture who are the architect/engineers for the federal office building involved. Poor stated that periodic measurements had been made by a licensed surveyor of the settlement of the buildings adjacent to the construction project and that tests were made of the foundation of at least one large building on the adjacent property. The results indicated an accelerated rate of settlement and lateral movement of the adjacent buildings. Poor concluded that the present condition of the adjacent buildings 'presents a possible hazard to life, limb and property. This is true even though no further construction work is undertaken and the hazard extends to all the buildings adjacent to the construction site irrespective of their present condition of movement.' Poor's conclusions were concurred in in affidavits submitted by William H. Mueser, senior partner in a firm of consulting engineers specializing in foundations for buildings, bridges, and site and soil investigations, and by Fred N. Severud, senior partner in the consulting engineering firm who are the structural engineers for the federal office building.
 
 
 7
 The tenants submitted affidavits of William Shore, an engineer, who stated that he had examined the property, that no emergency existed and that the buildings were safe, and of Benjamin Leavin, an engineer, who concluded, also after examination of the property, that 'there is absolutely no possibility of any collapse while no further construction and foundation work goes on.'
 
 
 8
 From what was said at the argument, there had been no further settlement or lateral movement of the buildings from May 6 to May 27 and, so far as we know, that remains true today.
 
 
 9
 The government further stated that each day's delay caused a loss of approximately $8,000. At the argument the tenants asked for a hearing of the government's experts, a chance to engage further experts of their own, and the appointment of an independent expert to examine the properties and report to the court.
 
 
 10
 Judge Tenney did not hear witnesses or appoint an independent expert and, in his opinion denying the applications, said that because of the allegations regarding the possible dire consequences of delay in the vacating of the buildings and the placing of the government in possession the court should not attempt to substitute its judgment for that of the parties responsible.
 
 
 11
 At the argument of this appeal, government counsel conceded that he could cite no case in which the government had ever sought to oust the occupants of condemned premises on such short notice as it had given the occupants of these buildings. Cf. United States v. 6576.27 Acres, etc., 77 F.Supp. 244 (D.N.D.1948). There can be no doubt that to require the many private businesses now housed in these buildings to move out within a few days would cause grave dislocation to them, their customers, and their many employees. For example, Addressing Machine and Equipment Company, which occupies two of the buildings here involved, alleges that it would take at least six months to locate adequate premises to accommodate its machinery, equipment, and an inventory valued at more than $1 million, in addition to moving expenses estimated at at least $150,000. Such a sudden dislocation would inevitably result in considerable irreparable financial loss, inasmuch as the government could not be held to reimburse the tenants for many of the emergency expenses as well as the expenses of moving to new premises. Of course to the extent that certain fixtures are deemed under the applicable law to constitute real estate the government must pay their reasonable value. See United States v. Certain Property, 306 F.2d 439 (2 Cir. 1962). But obviously this may be but a small fraction of the loss which would follow a precipitate expulsion from the premises. Moreover, while the government may well have acted as prudently and expeditiously as possible, certainly the occupants are entirely without fault in this matter and are entitled to have any reasonable doubt decided in their favor consistent with the public safety.
 
 
 12
 On balance, having in mind the probable dangers of the situation, the very grave consequences of hasty action, and the power of the district court to determine the terms and conditions of possession by the government, 40 U.S.C. 258a, we think the district court should proceed with all speed to hear and examine such expert witnesses as the parties concerned may wish to call, and also any public officers or employees who are concerned with the public safety and condition of buildings. The district court should further inquire into what, if any, undertakings or other means of assurance may be feasible to save harmless the government, and any contractors or other interested parties, with respect to claims arising out of continued occupancy of the premises, so that such continued occupancy may be conditioned on terms reasonable to the government, including payments in lieu of rent for the period since April 30 and for any period during which the court may permit continued occupancy by any of the tenants.
 
 
 13
 Meanwhile and until the district court has made its determination, following a further hearing, we stay the government from taking any steps to oust any of the tenants from possession, provided, of course, that the occupants compensate the government for continued occupancy as the district court may direct.
 
 
 14
 The case is remanded to the district court for further proceedings consistent with this opinion. We direct our mandate to issue forthwith.