**Clarence E. MILLS et al., Appellants,**
v.
**UNITED STATES of America, Appellee.**

**OZARK REAL ESTATE COMPANY, Appellant,**
v.
**UNITED STATES of America, Appellee.**

Nos. 18156, 18157.

United States Court of Appeals
Eighth Circuit.

July 13, 1966.

H. Clay Robinson, of Sexton & Robinson, Fort Smith, Ark., for appellants. Sexton & Robinson, Forth Smith, Ark., were on the brief.

Roger P. Marquis, Atty., Dept. of Justice, Washington, D. C., for appellee. Edwin L. Weisl, Jr., Asst. Atty. Gen., Washington, D. C., Charles M. Conway, U. S. Atty., Fort Smith, Ark., Max E. Findley, Sp. Asst. to the U. S. Atty., Fort Smith, Ark., were with him on the brief.

Before VAN OOSTERHOUT, BLACKMUN and GIBSON, Circuit Judges.

BLACKMUN, Circuit Judge.

A condemnation commission, appointed under Rule 71A(h), Fed.R.Civ.P., has fixed the compensation for the government's taking in 1962 of certain interests in Arkansas land for the Dardanelle project on the Arkansas River. The district court (Judge Miller) approved the commission's report in the two cases here under review and entered judgment accordingly. United States v. 599.86 Acres of Land, 240 F.Supp. 563 (W.D. Ark.1965). The owners appeal.

We recently passed upon this same commission's determinations concerning other lands and we upheld the district court's judgment confirming the report. Morgan v. United States, 356 F.2d 17 (8 Cir. 1966). That review was one made particularly in the light of United States v. Merz, 376 U.S. 192, 84 S.Ct. 639, 11 L.Ed.2d 629 (1964).

These appeals are less complex than Morgan v. United States, for no question is raised here as to the court's instructions to the commission even though those instructions were delivered prior to the decision in *Merz*. The present appellants' complaint is directed to the evidence and to what they regard as the illogic of the commission's findings. Their joint brief defines the narrow controversy:

"The questions at issue between the landowners and the Government were the contribution to the fair market value of the properties of the coal deposits, and the amount of damage to the deposits caused by the construction of the Dardanelle Dam Project."

Judge Miller in his opinion has set forth the general facts accurately and in detail and they need no lengthy repetition here.

Clarence E. Mills and his wife (No. 18,156) owned 133.33 acres which they had acquired in 1944. The government took 81.14 acres of this, exclusive of the mineral rights, and imposed a perpetual flowage easement on 11 additional acres. The Mills thus retain 41.19 acres. According to evidence which the owners introduced, the property is underlaid with a strata of semi-anthracite coal 38 inches thick at a depth ranging from 130 to 230 feet; some of this, however, has been removed by mining in past years.

Ozark Real Estate Company (No. 18,-157) owned 49 acres. The government took the fee in 17.69 acres, exclusive of the mineral rights, and imposed a perpetual flowage easement on 3.5 additional acres. This left 23 acres plus 4.81 acres devoted to a railroad right-of-way. According to evidence introduced by Ozark, its tract is underlaid with a coal strata 42 inches thick at a depth of approximately 80 feet; the Ozark tract has not been mined.

All agree that there is coal on the condemned lands. Mining operations have been conducted in the area since the Civil War. The mine on the Mills property was abandoned before 1920. One witness estimated that reserves in the vicinity were as extensive as 96 million tons. At the time of the taking only five mining operations were still being conducted in the area. The coal has a high fixed carbon content and is sold primarily to zinc smelters and not as fuel. Demand for coal from the field has decreased to about 100,000 tons a year. The mines in the area are interconnected underground; pumping is necessary. A portion of the coal on the Ozark tract could be strip mined. Mining has not been feasible since the taking.

The parties vigorously differ as to the coal's significance and its consequent value. The owners assert that the highest and best use of their properties was for coal mining. The government claims that the coal deposits had little or no value and that surface use was the important factor. The parties' opposing approaches produce substantial value differences.

The commission in its report stated that "not all of the coal shown by the reserves is presently marketable at any price" and concluded that coal on the Mills and Ozark properties had little recognizable value. It fixed the Mills' compensation, with severance damages, at $5,550 and Ozark's at $1,850. These are the figures which were sustained by the district court and which the appellants say disclose that the commission's report is clearly erroneous within the meaning of Rules 71A(h) and 53(e) (2), Fed.R.Civ.P.

■ The usual standard of compensation in federal condemnations is expressed in United States v. Miller, 317 U.S. 369, 373, 63 S.Ct. 276, 279, 87 L.Ed. 336 (1943), as "the full and perfect equivalent in money of the property taken". This court recently has recognized and applied this standard. United States v. South Dakota Game, Fish & Parks Dep't, 329 F.2d 665, 667–668 (8 Cir. 1964), cert. denied 379 U.S. 900, 85 S.Ct. 187, 13 L.Ed.2d 175; United States v. Crance, 341 F.2d 161, 165–166 (8 Cir. 1965), cert. denied 382 U.S. 815, 86 S.Ct. 36, 15 L.Ed.2d 63; Hembree v. United States, 347 F.2d 109, 110 (8 Cir. 1965); United States v. Fort Smith River Dev. Corp., 349 F.2d 522, 526 (8 Cir. 1965). The appellants in their brief concede that the commission "employed the correct measure of just compensation" and that it understood the issue before it. But, the argument goes, the government has presented no competent evidence as to the value of coal comparably in place; instead, the owners' evidence, presented primarily through witness B. E. Cobb, is the only competent evidence in the record and thus is to be accepted.

We do not agree that the government's case is so easily surmounted. Only the government introduced evidence as to before and after values of the surface. This, of course, was in line with its theory. It is apparent to us, from a reading of the commission's report, that the commission accepted the government's surface evidence and then added a nominal value to this for the coal in place. This value in turn rests on the testimony of T. A. Raley, who has appeared elsewhere in these Arkansas condemnations, see Morgan v. United States, supra, p. 22 of 356 F.2d, and who testified, without objection, as to his investigation of sales of coal interests in the field nearby indicating a value of between $5 and $25 per acre. The owners challenge the validity of this witness' testimony because he conceded that he was not a coal expert and professed some ignorance as to the amount of the coal on the owners' tracts.

■ But Raley's testimony as to other sales is not devoid of value. United States v. Toronto, H. & B. Nav. Co., 338 U.S. 396, 402, 70 S.Ct. 217, 94 L.Ed. 195 (1949). He may have been no expert on coal itself but he was an expert otherwise qualified and acknowledged by the parties as such. The commission accepted his testimony as supporting a bonus value for the coal's existence and little more.

■ Actually, the commission, if it chose, could have ignored Raley's testimony as to other sales and as to the bonus factor. This, however, would have worked to the owners' detriment for it does not necessarily follow that witness Cobb's testimony would then have to be accepted. Cobb's valuation was simply the product of his estimate of reserves and 25¢ per ton, that is, tons in place times a suggested royalty. If one can assume, in the first instance, that these two figures are appropriate, the result reached by Cobb may properly be regarded as ignoring the large excess of the field's reserves over demand; the significance, expensewise, of the depth of the overlay; the costs of extraction

which, in addition to profit, must be recouped by any operator; and the stark facts of mine abandonments and of limited current mining. Value implies demand and a buyer. Cobb's testimony assumed both but, apart from his own comment that he "would be interested in buying tracts of land such as" those of the owners, afforded proof of neither. Although minerals in place is a factor to be considered, there must be more than a mere theoretical future demand and use. "There must be some objective support for the future demand, including volume and duration. Mere physical adaptability to a use does not establish a market". United States v. Whitehurst, 337 F.2d 765, 771–772 (4 Cir. 1964), and cases cited in the court's footnotes; Georgia Kaolin Co. v. United States, 214 F.2d 284, 286 (5 Cir. 1954), cert. denied 348 U.S. 914, 75 S.Ct. 294, 99 L.Ed. 716; United States v. Foster, 131 F.2d 3, 5 (8 Cir. 1942), cert. denied 318 U.S. 767, 63 S.Ct. 760, 87 L.Ed. 1138; United States v. 116.00 Acres of Land, 227 F. Supp. 100, 105–106 (W.D.Ark.1964); United States v. 620.00 Acres of Land, 101 F.Supp. 686, 689–690 (W.D.Ark. 1952). The district court concluded, p. 572 of 240 F.Supp., that the owners' valulation evidence, including their own opinions, "is purely speculative and conjectural" and "not based upon the realities of the situation". We are not able to disagree.

One additional comment is perhaps in order. The commission's report, as we observed in Morgan v. United States, supra, p. 22 of 356 F.2d, was filed before the Supreme Court's decision in United States v. Merz, supra. As a consequence, the report could not have anticipated in every detail the suggestions and guidelines of that case. However, after reviewing the report and the printed record, we also conclude here that the *Merz* requirements were sufficiently met by both the commission and the district court. The commission's hearing appears to have been appropriately and fairly conducted and the commission's path to its decision is discernible and

clear. These appeals do not have to do with hearing methods or with the court's instructions. They concern only the weighing of opinion testimony and other evidence. As to this we note acceptance of some testimony and rejection of other testimony but we ascertain nothing which can be characterized as clearly erroneous.

Affirmed.