**Ralph SYKES, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 18838.**

United States Court of Appeals
Eighth Circuit.

April 11, 1968.

Ralph Sykes, pro se.

Stephen C. Glassman, Atty., Dept. of Justice, Washington, D. C., for appellee. Edwin L. Weisl, Jr., Asst. Atty. Gen., Dept. of Justice, Washington, D. C., Charles M. Conway, U. S. Atty., Fort Smith, Ark., Max E. Findley, Special Asst. to the U. S. Atty., Fort Smith, Ark., and Edmund B. Clark, Atty., Dept. of Justice, Washington, D. C., were with Stephen C. Glassman, Washington, D. C., on the brief.

Before VOGEL, Senior Circuit Judge, BLACKMUN and LAY, Circuit Judges.

LAY, Circuit Judge.

The landowner appeals from the judgment of the district court approving a condemnation award set by a Commission appointed pursuant to Fed.R.Civ. P. 71A(h). The district court in a separate order also entered judgment against the landowner for restitution to the government for an overpayment in the deposit it made at the time of the taking of the land in question. We reverse and remand for a new trial.

A preliminary jurisdictional problem arises from the chronology of events shown in the record:

1. On December 7, 1966, the District Judge, the Honorable John E. Miller, filed his opinion finding the Commission's award proper and stating that the overpayment issue "is a question that is not presently before this court."

2. On the same day he entered a separate order fixing the compensation for the land taken. At the end of this order, he noted that "Jurisdiction of this cause is retained for such other orders as may be necessary."

3. On February 2, 1967, appellant filed his notice of appeal from the judgment of December 7, 1966.

4. On February 20, 1967, Judge Miller filed a document titled "FINAL JUDGMENT" in which he confirmed that the amount of compensation previously set in the December 7 order was "just compensation" and added:

"That the difference between the amount heretofore disbursed to said Defendants on June 3, 1963 ($10,-000.00), and the total amount of just compensation awarded for the taking of said tracts, is the sum of $6,925.00, for which sum the United States of America is hereby granted a judgment

against the Defendants, Ralph Sykes and Sue Sykes, together with interest thereon at the rate of 6% per annum from June 3, 1963, and running until the amount of said deficiency judgment, together with interest thereon, is re-deposited into the registry of this Court."

5. On March 2, 1967, an attorney for appellant served and filed a "motion for new trial and to alter or amend judgment;". The motions were never ruled upon by the court below.

6. On March 7, 1967, appellant's attorney was allowed to withdraw.

7. On March 8, 1967, appellant requested leave to withdraw his notice of appeal filed February 2, 1967. This was allowed by the district court on March 9, 1967.

8. On April 18, 1967, a new notice of appeal was filed from the "final judgment" of February 20, 1967.

■■■ The district court's order of December 7, 1966, disposed of the controversy in the case by approving the Commission's determination of just compensation. Cf. Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed.

911 (1945); City of Louisa v. Levi, 140 F.2d 512, 514 (6 Cir. 1944). Even though the order "retained" jurisdiction, the court specifically disclaimed any intention to rule on the overpayment issues. The opinion and order of December 7 were set forth on separate documents, as required by Fed.R.Civ.P. 58, as amended, and the order was entered as provided in Rule 79(a). It is clear that the mere retention of jurisdiction for future ministerial orders does not in itself withhold the "finality" required to make the order appealable. See Kiehn v. Dodge County, 19 F.2d 503, 504 (8 Cir. 1927); see generally 6 Moore's Federal Practice ¶ 54.12[1] and particularly at p. 120, n. 48. Consequently, the order of December 7, 1966 was final for the purpose of appeal, and the appellant's timely notice of appeal served to divest the lower court of jurisdiction over the cause on February 2, 1967. The subsequent motion for new trial, the new "final judgment" of February 20, 1967, the purported withdrawal of notice of appeal, and the notice of appeal filed April 18, 1967, were all nullities since jurisdiction then was in the appellate court.[1] In its present posture, then, this appeal presents only the issues arising

---

1. If the judgment of February 20, 1967, was valid, this court would then have no jurisdiction to entertain an appeal from the judgment of February 20, 1967, since the notice of appeal was filed at the time the motion for new trial was pending. It is clear until the motion for new trial is ruled upon a judgment is not final and any appeal therefrom would have to be dismissed as premature. United States v. Crescent Amusement Co., 323 U.S. 173, 65 S.Ct. 254, 89 L.Ed. 160 (1944); Leishman v. Associated Wholesale Electric Co., 318 U.S. 203, 205, 63 S.Ct. 543, 87 L.Ed. 714 (1943); DiGiovanni v. Di Giovannantonio, 98 U.S.App.D.C. 147, 233 F.2d 26 (1956); Knox v. United States Lines Co., 294 F.2d 354 (3 Cir. 1961). Sykes in a letter asked the clerk of the district court to "*withdraw*" his notice of appeal from the December 7 judgment. The request was mailed only to Judge Miller, who then issued an *ex parte* order granting the request. The record does not indicate that any notice of the request was served upon

the United States. Federal Rule of Civil Procedure 73(a), while it does permit the district court to "dismiss the appeal upon motion *and notice* by the appellant," (emphasis ours), is a narrow exception to the general rule that filing a notice of appeal deprives the district court of jurisdiction over the subject matter. Under the peculiar circumstances here, we think it appropriate to enforce strictly the prerequisite of notice. The *ex parte* dismissal was improper and ineffective to deprive Sykes of his intended appellate review. There occasionally occur circumstances in which the appellee may have cause to object to a dismissal of the appeal. See, e. g., Harisiades v. Shaughnessy, 90 F.Supp. 431 (S.D.N.Y.1950), modified on other grounds, United States ex rel. Harisiades v. Shaughnessy, 187 F.2d 137 (2 Cir.), affirmed, 342 U.S. 580, 72 S.Ct. 512, 96 L.Ed. 586 (1952). Furthermore, in this case it is obvious that Sykes was not actually moving for a "dismissal" but only for a chance to appeal the February 20 judgment.

out of the final judgment of December 7, 1966.[2]

■ Appellant has appeared pro se below as well as on this appeal. He insists as he did before the trial court that he was without counsel at the Commission's hearing and therefore was denied due process and "effective assistance of counsel." However, as Judge Miller points out in his opinion below, appellant had retained competent counsel and chose to discharge him. Appellant insists that he wanted to use the same counsel and experts as litigated in Ozark Real Estate Co. v. United States, 377 F.2d 88 (8 Cir. 1967), involving similar and adjacent tracts of land. However, in the above case the Commission disregarded the landowner's experts' appraisal and awarded compensation on the basis of the appraisal of the government's witnesses. Presumably, appellant would have used the same experts and would have met a similar result had he joined in that proceeding. This court affirmed the award handed down by the Commission.[3]

■ Appellant's basic contention on appeal is that he has been deprived of his right of trial by jury under the Seventh Amendment. This court has recently repeated the principle that the Seventh Amendment applies only to "suits at common law," and therefore only in those actions triable before a jury at common law at the time the Amendment was adopted can *the right* be raised. See Klein v. Shell Oil Co.,

2. However, if there is eventual need to deal with the alleged overpayment, and in order to prevent further unnecessary delay in the final disposition of this matter, we direct attention to two aspects of the overpayment claim. First, it is the clear implication of United States v. Miller, 317 U.S. 369, 382, 63 S.Ct. 276, 284, 87 L.Ed. 336 (1943), that a landowner is entitled to a hearing on the overpayment question. Before the entry of a final judgment on the issue, he should be given a "full opportunity to urge any meritorious reasons why judgment of restitution should not be entered against [him]." Id. Secondly, we express serious doubt whether appellant can be made liable for interest on the overpayment he received *before the ascertainment of the principal amount of the overpayment.* The lower court's decree of February 20, while we have held it to be a nullity, indicates that the interest on the overage should run from the date of disbursement of the government's deposit to the appellant. The amount of the deposit and disbursement were voluntary determinations by the government, and as the lower court pointed out, "it can be inferred that the deposit of $10,000 as estimated just compensation was the result of an error on the part of some Government employee. * * *" Even though the award of interest and the determination of the interest period are normally discretionary with the trial court, under these circumstances we think more applicable the rule that money paid or received by mistake does not draw interest until after discovery of the mistake. United States v. Susanna Plantation, 219 F.Supp. 31, 34 (W.D.La. 1963); cf. United States v. Skinner & Eddy Corp., 28 F.2d 373 (W.D.Wash. 1928); see generally 47 C.J.S. Interest § 11, p. 23. The judgment for overpayment is analogous also the ascertainment of a previously unliquidated sum, and in such cases, the interest runs only from the date of the ascertainment. See e. g., Miller v. Robertson, 266 U.S. 243, 258, 45 S.Ct. 73, 69 L.Ed. 265 (1924); Southern Painting Company of Tennessee v. United States, 222 F.2d 431 (10 Cir. 1955); Kennedy v. Clayton, 216 Ark. 851, 227 S.W.2d 934, 939 (1950); see generally 47 C.J.S. Interest § 19, p. 28. In United States v. Miller, supra, 317 U.S. at 382, n. 28, 63 S.Ct. at 284, there is further indication of the propriety of interest running only "from the date of the judgment in the eminent domain proceeding" in circumstances similar to the instant case. The only decision passing on the precise question holds to the contrary. See United States v. 25.4 Acres of Land, 82 F.Supp. 394 (E.D.N.Y.1949). However, we feel the New York District Court overlooked the considerations we have herein set forth.

3. An award of $240,600 for 1,613 acres affected was approved, Ozark Real Estate Co. v. United States, 377 F.2d 88 (8 Cir. 1967). In another related case, awards of $5,550 for the 81 acres belonging to one party, and $1,850 for the 21.5 acres of another party were approved in Mills v. United States, 363 F.2d 78 (8 Cir. 1966).

386 F.2d 659 (8 Cir. 1967). We specifically passed upon this question in United States v. Hess, 71 F.2d 78, 80 (8 Cir. 1934).

■ Rule 71A(h) of the Federal Rules of Civil Procedure reads, in part:

"* * * any party may have a trial by jury of the issue of just compensation by filing a demand therefor within the time allowed for answer or within such further time as the court may fix, unless the court in its discretion orders that, because of the character, location, or quantity of the property to be condemned, or for other reasons in the interest of justice, the issue of compensation shall be determined by a commission of three persons appointed by it."

In commenting upon this rule, Judge Woodrough said in United States v. Chamberlain Wholesale Grocery Co., 226 F.2d 492, 498 (8 Cir. 1955), cert. denied 350 U.S. 989, 76 S.Ct. 475, 100 L.Ed. 855 (1956):

"There can be no doubt that when the committee 'earnestly' recommended 'the rule as now drafted for promulgation by the Court, in the public interest', it intended a broad discretion to be vested in the District Court to choose between the use of juries or of commissioners in the condemnation cases brought before them."

■ However, an appellate court does have a duty, where a party requests a jury trial, to review the reasons for assigning a commission to make findings of facts. See United States v. Theimer, 199 F.2d 501 (10 Cir. 1952). Judge Miller in his order of July 28, 1964, assigned the reasons for exercising Rule 71A(h) in the present case to be the same as those that existed in the first

case, United States v. 366.05 Acres of Land, Civ.No. 1528 (W.D.Ark.), involving the Dardanelle project on the Arkansas River. His original order appointing a commission, dated December 14, 1960, recites:

1. The project requires the condemnation of approximately 800 tracts owned by about 600 different parties.

2. Many of the tracts have disputed boundaries.

3. Most of the area is underlaid with minerals of various kinds, including oil and gas, and there are various lease rights outstanding.

4. A great number of tracts will be severed from now-operating units and invariably the question of severance damage will arise.

5. Generally, the property is valuable for agricultural as well as mineral purposes, and "because of the character, location, and quantity of the property to be condemned, in the interest of justice the issue of just compensation should be determined by a Commission of three persons."

6. "If a Commission is not used, the landowners will be required to travel from 50 to more than 100 miles to attend Court, and it will constitute a hardship on said landowners to transport or cause to be transported and to pay the expenses of their witnesses to Fort Smith, Arkansas. It is highly impractical and expensive to transport a jury to view the tracts involved in the area, and the court is convinced that evenhanded justice to all concerned requires that just compensation be determined by a Commission composed of experts in the valuation of property. * * *"

■ Most of these reasons appear to be inapplicable to the present case.[4]

4. The Advisory Committee commented as to Rule 71A(h):

"'In this connection, your Committee interprets Rule 71A(h) as prescribing trial by jury as the usual and customary procedure if demanded to be followed in

fixing the value of property taken in condemnation proceedings, and as authorizing reference to Commissioners only in cases wherein the judge in the exercise of a sound discretion based upon reasons appearing in the case finds that the in-

Here, we are faced with evaluating individually just two of the tracts owned by Mr. Sykes. There is no "boundary dispute" to complicate the evaluation nor is there any issue with regard to mineral leases. Furthermore, in the original cases only the government asked for a jury trial, whereas the landowners did not. The court's original feeling that the expense to the landowners attending court, in bringing witnesses, or in taking the jury to the scene, etc., justified use of the commission, would seem less appropriate in the instant case. Here the landowner asked for a jury trial as well as the government. Although the right to a jury trial was not an issue in Morgan v. United States, 356 F.2d 17 (8 Cir. 1966), the government in its brief at page 4 in a footnote filed before this court stated:

"The Government's complaint demanded a jury trial and Morgan joined in this motion. In denying that motion the court said that it had 'been operating through the commission' since entry of the first order in this project and 'I am convinced that in the interest of justice the question of just compensation should be referred to the Commission.' *We believe that such blanket referral of all cases without regard to the issues to be tried or other circumstances of the cases is contrary to the language and purpose of the rule, which contemplates that jury trial is to be the general rule, if demanded, and reference to a commission the exception.* See United States v. 2,872.88 Acres of Land in Clay & Quitman Counties, 310 F.2d 775, 777 (C.A. 5, 1962)." (Emphasis ours).

This court strongly recommended a jury trial upon remand where both parties had demanded it in a condemnation case. See United States v. Bell, 363 F.2d 94 (8 Cir. 1966). In view of our decision to remand for a new trial, we prefer to only repeat the same observation as we did in *Bell*, in again strongly recommending a jury trial in view of the original demand for the same by *both* parties. Under such circumstances the denial of a trial by jury should be the exception and not the rule. See United States v. Leavell & Ponder, Inc., 286 F.2d 398, 408–409 (5 Cir. 1961); United States v. Vater, 259 F.2d 667 (2 Cir. 1958.); United States v. 2477.79 Acres of Land, 259 F.2d 23 (5 Cir. 1958).

*The Findings.*

The Commission's findings recite (1) that Mr. Sykes' failure to pull the machinery from his mine before letting the mine flood did not entitle him to compensation for the machinery; (2) nor was he entitled to compensation for his $7,000 pumping expense to protect the machinery for a period of time after the taking.

The first statement appears to be more of a legal conclusion than a factual finding. We know of no authority which supports such a conclusion, nor do we understand from the opinion the rationale behind it. The landowner has stated (but offered no supporting evidence) that he had over $40,000 worth of equipment[5] in the mine, all of which is now apparently under water.

The law of eminent domain clearly recognizes compensation for the taking of fixtures attached to the land even though severance from the land would render them worthless. See United States v. Becktold Co., 129 F.2d 473, 476–477 (8 Cir. 1942); In re Post Office Site in Borough of Bronx, 210 F. 832 (2 Cir. 1914); see generally 4 Nichols, Eminent Domain § 13.12[1]. In the present case there is no specific determination either in the district

terests of justice so require'" Report of Advisory Committee of March 18, 1952, to the Supreme Court, cited in United States v. Theimer, 199 F.2d 501, 503 (10 Cir. 1952).

5. The only description of the equipment is in appellant's brief:

"Appellant cannot remove slope or air shaft and other fixed objects such as machinery buildings, tipple and power lines or loading tipple on railroad tracks."

court's instructions to the Commission or in the Commission's report whether the machinery and equipment involved constitutes fixtures.[6] The Commission only finds that the machinery would affect the salability of the land. And it specifically excludes any consideration of its value, apparently because of the landowner's conduct subsequent to the taking.

On the assumption that in a new trial the equipment is found to constitute fixtures attached to the realty taken, a proper measure of compensation for the taking would be the value of the land as enhanced by the fixtures in place. See generally United States v. Block, 160 F.2d 604 (9 Cir. 1947); Clark v. United States, 155 F.2d 157 (8 Cir. 1946); United States v. Becktold Co., 129 F.2d 473 (8 Cir. 1942); United States v. Certain Land in Borough of Manhattan, 332 F.2d 679 (2 Cir. 1964). We note that one of the government's witnesses did not appraise the land until May or June of 1966, after the machinery was flooded. The law is clear that the compensation should be assessed as of the time of the taking. United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336 (1943); State of Nebraska v. United States, 164 F.2d 866 (8 Cir. 1947). There is no justification to hold that when the land is made useless by the government's right to flood, the subsequent abandonment by the landowner prevents him from claiming compensation for his loss at the time of the taking.[7]

The Commission's implication that the machinery should have been removed suggests that they considered it to have been left with the landowner as part of the reserved mineral rights. If the Commission's rationale was in fact that the equipment was not taken, the refusal to compensate the landowner is still impermissible. In the first place, the mineral rights left to the owner were expressly made subject to the right of the United States to flood, and the Commission admits that in actuality, the flooding has destroyed the feasibility of continued coal mining on any scale in the Sykes mine. The actual, practical result is still to destroy any value of the equipment in place, and it is this realistic view of the taking which must determine the compensation. United States v. Dickinson, 331 U.S. 745, 750–751, 67 S.Ct. 1382, 91 L.Ed. 1789 (1947). An analogous situation was presented in United States v. Bobinski, 244 F.2d 299, 303 (2 Cir. 1957), in which the court stated:

"* * * in any event it is clear that the Government gave the landowner a simple choice of moving her buildings or losing them. In such circumstances the condemnee is entitled to compensation for the loss of value sustained, whether the buildings were actually occupied or destroyed or whether they were merely depreciated in the process of being moved."

Furthermore, on the assumption that the rationale of the Commission was that the machinery as fixtures was not taken by the government by reason of the landowner's retained interest, then, provided their salvage value justified removal, appellant may have been entitled to compensation for their removal. The reason for this is set out in 4 Nichols, Eminent Domain § 14.2471 [1] at page 654:

"Where the taking does not include the fixtures and it becomes incumbent

---

6. It is true that no compensation need be paid for the removal of personal property, as opposed to fixtures, from condemned property. Joslin Mfg. Co. v. City of Providence, 262 U.S. 668, 676, 43 S.Ct. 684, 67 L.Ed. 1167 (1923); Foster v. United States, 145 F.2d 873, 875 (8 Cir. 1944); In re Post Office Site in Borough of Bronx, supra; see cases collected in 4 Nichols, Eminent Domain

§ 14.2471 [2] at p. 662, n. 22. From the description of the equipment in the instant case, however, we cannot assume only personal property was involved.

7. One can only speculate that perhaps the original government offer of $11,500 and deposit of $10,000 involved an enhanced initial valuation of the land with the machinery in place.

upon the owner to remove the fixtures, the prevailing rule is that the cost of such removal may be considered. This rule is predicated upon the dominant principle of valuation in all partial taking cases,—the before and after rule. Upon the application of this principle the owner is entitled to the difference between the value of the land with the fixtures annexed and the value of the fixtures. The latter factor is diminished by the cost of removal." [8]

Under the circumstances, we feel that the findings of the Commission are not properly set forth for the district court adequately to review. United States v. Merz, 376 U.S. 192, 198–199, 84 S.Ct. 639, 11 L.Ed.2d 629 (1964); United States v. 2,872.88 Acres of Land, 310 F.2d 775 (5 Cir. 1962). This discussion leads only to the conclusion that the award must be set aside for lack of proper findings to review, and for a new trial with full consideration of proper compensation for the total taking, including due regard for any fixtures attached to the land, or for damages to the interests retained if the same are justified by the evidence.

If further trial is necessary, as it will be unless the parties can reach agreement, we are mindful that the award appellant received in the first hearing may well prove to have been a liberal one, as the trial court suggested. However, we have no alternative to remanding the case for retrial under the present record submitted.

8. See also United States v. Certain Property Located in Borough of Manhattan, 225 F.Supp. 498 (D.C.N.Y.1963), where the United States took a building in fee, but did not take tenant's fixtures, it was held that the tenant was entitled to the difference between the value of the affixed property in place and the value as removed, plus the cost of removal, but the damages were not to exceed the value of the fixtures in place. Since the taking of the fee without the fixtures attached would amount to a partial taking, arguably then, the rule permitting compensation for damage proximately caused to estates retained after a partial taking would be applicable. See United States v. General Motors Corp., 323 U.S. 373, 382–384, 65 S.Ct. 357, 89 L.Ed. 311 (1945); United States v. Chicago, B. & Q. R. Co., 82 F.2d 131, 106 A.L.R. 942 (8 Cir. 1936); United States v. Chicago, B. & Q. R. Co., 90 F.2d 161 (7 Cir. 1937); 2,953.15 Acres of Land v. United States, 350 F. 2d 356, 360–361 (5 Cir. 1965); see generally 4 Nichols, Eminent Domain § 14.2. Furthermore, there is authority for compensating the owner for protecting his retained property from damage that would otherwise be caused by the partial taking. (Mr. Sykes alleges a cost of $7,000 for his attempt to keep his mine and machinery pumped free of water after the taking.) United States v. Dickinson, 331 U.S. 745, 751, 67 S.Ct. 1382, 91 L.Ed. 1789 (1947); United States v. Chicago, B. & Q. R. Co., 90 F.2d 161, 169. We do not reach this issue here, however, because the Commission's report does not furnish the essential findings as to whether the machinery constitutes part of the taking or not, or whether it constitutes fixtures or mere personalty or some combination of these contingencies.