**UNITED STATES of America,**
**Appellee,**

v.

**339.77 ACRES OF LAND, MORE OR LESS, IN JOHNSON AND LOGAN COUNTIES, ARKANSAS; and Ralph Sykes, Appellant, et al., and Unknown Owners.**

**No. 19656.**

United States Court of Appeals
Eighth Circuit.

Jan. 8, 1970.

Rehearing Denied Feb. 13, 1970.

Ralph Sykes, pro se.

Charles N. Woodruff, Atty., Dept. of Justice, Washington, D. C., for appellee, Shiro Kashiwa, Asst.Atty.Gen., S. Billingsley Hill, Atty., Dept. of Justice, Washington, D. C., and Bethel B. Larey, U. S. Atty., Fort Smith, Ark., on the brief.

Before BLACKMUN, MEHAFFY and LAY, Circuit Judges.

LAY, Circuit Judge.

This appeal involves another in a series of condemnation actions growing out of the Dardanelle Lake and Dam project on the Arkansas River. The landowner, Mr. Sykes, originally withdrew, at the time of the taking of the land in question, the government deposit of $10,000. In December 1966 the district court approved a Commission's determination of "just compensation" at

$3,075. On appeal, the judgment was reversed by this court, Sykes v. United States, 392 F.2d 735 (8 Cir. 1968), by reason of certain errors made in the Commission's findings. Upon retrial before a jury, a verdict was rendered in favor of the landowner in the sum of $5,500. Final judgment was entered for the government as to the difference between the amount of the verdict and the amount previously deposited and withdrawn by the landowner. The judgment we review is in the amount of $4,500, with interest from June 3, 1963, the date of the original disbursement.

Although represented by counsel in the jury trial, the landowner now appears, as he did in the first appeal, without counsel. His brief does not conform with Rule 28 of the Federal Rules of Appellate Procedure, and his appeal is subject to dismissal for this reason. Cf. Lowe v. Taylor Steel Products Co., 373 F.2d 65 (8 Cir.1967). However, since appellant appears without counsel, we have again painstakingly reviewed the entire record in an attempt to appraise his overall claim that a grievous injustice has been done. We observe, however, that appellant's brief is so vague, unintelligible and grossly repetitious that this court has difficulty in determining what error the landowner now asserts. We can only surmise that he is dissatisfied with the jury's valuation of the land taken. We therefore approach our review solely on the issue as to whether there exists substantial evidence to sustain the jury's award of "just compensation."

The government has taken for use the landowner's tract of 18.98 acres of land which covers a mine containing semianthracite coal.[1] The date of the taking was May 22, 1963. Appellant has in the past occasionally leased the use of the mine and has received $1.25 a ton for the limited quantity of coal removed. According to the evidence, the last coal mined under a lease agreement occurred

---

1. Included in the taking was also one-half acre for an easement for flowage rights located on the remaining 20 acres owned by appellant.

in the early part of 1961, when $914.83 was paid for the extraction of approximately 700 tons. In many years of the landowner's ownership, the evidence shows no coal was removed. The taking reserved the mineral rights to the coal in the landowner, but subordinated such ownership to the right of the United States to flood. The evidence shows that the taking, for all practical purposes, destroyed the landowner's use of the rights reserved. As the trial court instructed, the landowner was entitled to the fair market value of the land as it was enhanced by the mineral rights actually deprived, as well as by the improvements (fixtures) thereon.

The landowner was the only witness, appearing in his behalf, who gave an opinion as to the value of the land. He appraised the land before the taking at $111,674, including $30,000 for the equipment destroyed by the flooding; and with an appraised valuation of $3,-000 after the taking. His valuation was based upon an estimated 63,340 tons of recoverable coal still in the mine at $1.-25 per ton or a total of $81,674.

The government's expert, Mr. Mabry, was an appraiser with the Corps of Engineers. He valued the 40 acre tract at $50.00 an acre, exclusive of the coal mine, and the value retained by the landowner at $1,025. His appraised value of "just compensation" was only $975 for the use of the landowner's property. He assessed no enhanced value for the destruction of the mineral rights retained, and observed that the fixtures in and about the mine were obsolete and valueless. This appraisal was corroborated in part by testimony from a geologist and mining consultant from Little Rock, a hydrological engineer and a geologist from the Corps of Engineers, and a witness from Ft. Smith, Arkansas, who had bought and sold coal mines for fifty years. Their testimony reflected that even before the government taking,

operation of the landowner's mine was dangerous because of natural flooding conditions in the alluvial valley of Spadra Creek; that there was a limited market or demand for the coal that could be mined; that because of the difficulty in mining operations, the economic return for the coal produced would always be less than the cost or investment in producing it. It was basically because of these reasons that the witnesses concluded the coal did not enhance the value of the property involved. This testimony was contradicted, at least in part, by the landowner and witnesses produced by him.

Mr. Sykes urges that the testimony of the government witnesses was not correct, was biased and therefore, clearly erroneous. We have considered the testimony of the various witnesses, and within our limited area of review as to factual matters, conclude that the jury could have as reasonably believed the government witnesses as they could have believed the testimony of the landowner.[2] Mr. Sykes argues a gross miscarriage of justice has taken place. Although not necessary to our conclusion, it may be desirable to point out (1) in the first appeal Mr. Sykes felt he was prejudiced since he was "forced" to appear without counsel in the Commission hearing; in contrast, in the instant case, he had competent trial counsel representing him throughout the trial; (2) in the first appeal Mr. Sykes felt he was prejudiced since he did not have a jury trial; although we stressed that the discretionary decision lay in the hands of the district judge, we urged serious consideration of the use of a jury upon retrial since both the landowner and the government had jointly requested it; in the second trial Mr. Sykes had the benefit of a jury; (3) the jury verdict does not reflect a blind acceptance of the testimony of the government's experts, but in fact awards over $4,500 more than

2. Parenthetically, we note that Mr. Sykes in the first proceedings before the Commission valued his mineral rights at only

$25,000 based upon a 50 cent per ton royalty paid to other owners in the area.

the valuation of the one government appraiser. Cf. Equitable Life Assur. Soc. of United States v. Carmody, 131 F.2d 318, 321 (8 Cir.1942); (4) the land value assessed by Mr. Sykes, although admissible, was reached upon an erroneous concept of fair market value.[3]

Judge Bright has recently outlined the many established rules governing valuation in condemnation proceedings. United States v. 3,698.63 Acres of Land, More or Less, 416 F.2d 65 (8 Cir.1969). Not the least relevant here is that an appellate court cannot "exercise a fact-finders prerogative of balancing the evidence." 416 F.2d at 69.

The United States Supreme Court said long ago:

"The jury were the judges of the credibility of the witnesses * * * and in weighing their testimony had the right to determine how much dependence was to be placed upon it. There are many things sometimes in the conduct of a witness upon the stand, and sometimes in the mode in which his answers are drawn from him through the questioning of coun-

---

3. The landowner's error in his method of evaluating fair market value is not an original one. His attempt at valuation is similar to other mine owners in the Dardanelle project. In Mills v. United States, 363 F.2d 78 (8 Cir. 1966), this court observed:

"Cobb's valuation was simply the product of his estimate of reserves and 25¢ per ton, that is, tons in place times a suggested royalty. If one can assume, in the first instance, that these two figures are appropriate, the result reached by Cobb may properly be regarded as ignoring the large excess of the field's reserves over demand; the significance, expensewise, of the depth of the overlay; the costs of extraction which, in addition to profit, must be recouped by any operator; and the stark facts of mine abandonments and of limited current mining. Value implies demand and a buyer. Cobb's testimony assumed both but, apart from his own comment that he 'would be interested in buying tracts of land such as' those of the owners, afforded proof of neither. Although minerals in place is a factor to be considered, there must be more than a mere theoretical future demand and use. There must be some objective support for the future demand, including volume and duration. Mere physical adaptability to a use does not establish a market.'" *Id.* at 80–81.

In United States v. Sowards, 370 F.2d 87 (10 Cir. 1966), the court encountered the same approach to valuation, that is, tonnage multiplied by unit price. The court of appeals held that this method of valuation does not have a rational foundation, reasoning from Judge Taylor's opinion in United States ex rel. TVA v. Indian Creek Marble Co., 40 F.Supp. 811 (E.D.Tenn.1941), where he explained:

"Fixing just compensation for land taken by multiplying the number of cubic feet or yards or tons by a given price per unit has met with almost uniform disapproval of the courts. This is true because such valuation involves all of the unknown and uncertain elements which enter into the operation of the business of producing and marketing the product. It assumes not only the existence, but the continued existence of a stable demand at a stable price. It assumes a stable production cost and eliminates the risks all business men know attend the steps essential to the conduct of a manufacturing enterprise. It eliminates the possible competition of better materials of the same general description and of the possible substitution of other and more desirable materials produced or possible of production by man's ingenuity, even to the extent of rendering the involved material unmarketable. It involves the assumption that human intelligence and business capacity are negligible elements in the successful conduct of business. It would require the enumeration of every cause of business disaster to point out the fallacy of using this method of arriving at just compensation. No man of business experience would buy property on that theory of value. True it is that quality and quantity have a place in the mind of the buyer and the seller, but the product of these multiplied by a price per unit should be rejected as indicating market value when the willing seller meets the willing buyer, assuming both to be intelligent. Values fixed by witnesses on such a basis are practically worthless, and should not be accepted. To the extent the valuation fixed by any witness contains this speculative element, to the same extent is its value as evidence reduced." *Id.* at 822.

sel, by which a jury are to be guided in determining the weight and credibility of his testimony. That part of every case, such as the one at bar, belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men; and, so long as we have jury trials, they should not be disturbed in their possession of it, except in a case of manifest and extreme abuse of their function." Aetna Life Insurance Co. v. Ward, 140 U.S. 76, 88, 11 S.Ct. 720, 724, 35 L.Ed. 371 (1891).

We affirm the judgment of the district court on the amount to be paid as restitution with the exception of the entry of judgment governing interest to run from the date of the original disbursement. The judgment is accordingly modified to read in favor of the government against the landowner for $4,500 plus six per cent interest from December 12, 1968, the date of the judgment entered below. See 392 F.2d 735, 739 n. 2.

The judgment is accordingly modified as set forth above, and as so modified is affirmed.