491 So.2d 608 (1986)
Ed L. BALL, Allen M. Bernkrant, David Coleman, E. Albert Pallot and Harry Touby, Trustees of Central Bancorp., Trust, Appellants,
v.
PUBLIC HEALTH TRUST OF DADE COUNTY, D/B/a Jackson Memorial Hospital, Appellee.
No. 85-2777.
District Court of Appeal of Florida, Third District.
July 22, 1986.
*609 Blank, Rome, Comisky & McCauley and Nancy J. Cliff and Robert Geiger, Miami, for appellants.
Robert A. Ginsburg, County Atty. and Robert L. Blake, Asst. County Atty., for appellee.
Before SCHWARTZ, C.J., and HUBBART and DANIEL S. PEARSON, JJ.
SCHWARTZ, Chief Judge.
The appellants-trustees are successors to the Central Bank & Trust Company which, it is now agreed, on August 17, 1981 mistakenly overpaid the appellee Public Health Trust (Jackson Memorial Hospital) $360,000 more than it was due on certain investment certificates. The bank did not discover its error until sometime before January 9, 1985, when it gave notice to Jackson of a possible discrepancy. It made formal demand for repayment on June 4, 1985. On August 9, 1985, after being served with the complaint in this cause, Jackson paid the $360,000 back.
Thereafter, the dispute between the parties has involved solely the amount of the prepayment interest to which the trustees are entitled. The trial court held, on the premise that a mutual mistake was involved  that is, that Jackson was also not aware of the error until formal demand was made  that interest was due only from the date of the demand, June 4, 1985, rather than from the actual overpayment, August 17, 1981; it also denied leave to amend the complaint so as to specifically allege that Jackson discovered and actually knew of the overpayment "well prior to January 9, 1985." Upon consideration of the trustees' appeal of these rulings, we agree with the first and reverse the second.

I
The appellants' primary argument is simplicity itself. They say that because Jackson had the use of the bank's money, the bank should receive the value of that money in the form of interest for the entire time that Jackson had it, that is, from August 17, 1981. Unfortunately for the acceptance of this position in its pure form, the Florida Supreme Court, in First State Bank of Fort Meade v. Singletary, 124 Fla. 770, 169 So. 407 (1936), which the trial court followed, squarely held that, in the case of a mutually unaware overpayment, interest does not run until a demand[1] or the institution of suit, whichever is first. Accord Richard v. Triester, 409 So.2d 101 (Fla. 3d DCA 1982). The appellants counter that Singletary did not survive Argonaut Insurance Co. v. May Plumbing Co., 474 So.2d 212 (Fla. 1985), which holds that the right to interest is determined by applying the principle that
the loss itself is a wrongful deprivation by the defendant of the plaintiff's property. Plaintiff is to be made whole from the date of the loss once a finder of fact *610 has determined the amount of damages and defendant's liability therefor.
474 So.2d at 215. We cannot agree.
The opinion in Argonaut expressly states that it is a mere reiteration and reaffirmation of the position long before adopted in Jacksonville, T. & K.W. Ry. v. Peninsular Land, Transportation & Manufacturing Co., 27 Fla. 1, 9 So. 661 (1891) and Sullivan v. McMillan, 37 Fla. 134, 19 So. 340 (1896). The promulgation of Singletary after these decisions must thus be viewed as a deliberate determination by the court that the doctrine they embody does not apply to this particular issue. Moreover, Argonaut, far from explicitly receding from Singletary, makes no reference whatever to it. See State ex rel. Garland v. City of West Palm Beach, 141 Fla. 244, 193 So. 297 (1940); Levy v. Levy, 483 So.2d 455 (Fla. 3d DCA 1986). In these circumstances, notwithstanding the trustees' perhaps-otherwise-persuasive arguments[2] that Singletary was unwisely decided and is contrary to the underlying rationale of Argonaut,[3] we conclude that we are bound by Singletary and must afford it determinative effect. Hoffman v. Jones, 280 So.2d 431 (Fla. 1973).

II
As has been indicated, however, Singletary is limited to cases in which "the mistake is mutual"; it also holds that "notice of the mistake" gives rise to the right to recover back the amount erroneously paid. 124 Fla. at 773, 169 So. at 408. Thus, if Jackson became aware  before the demand[4]  that it had been given money which did not belong to it, from that time forward it retained the sum wrongfully and had the obvious obligations both to return it and to pay interest until it did. Argonaut, 474 So.2d 212; Bergen Brunswig Corp. v. State Department of Health and Rehabilitative Services, 415 So.2d 765 (Fla. 1st DCA 1982), pet. for review denied, 426 So.2d 25 (Fla. 1983); see Senfeld v. Bank of Nova Scotia Trust Co. (Cayman), 450 So.2d 1157 (Fla. 3d DCA 1984) (knowing recipient of mistaken payment liable for conversion and under civil theft statute). Since we find no basis for denying the appellants the right to amend the complaint for the first time so as to allege just that, see Lewis v. Howanitz, 378 So.2d 310 (Fla. 3d DCA 1979), the cause is remanded for appropriate resolution of the familiar questions of what Jackson knew and when it knew it.
Affirmed in part, reversed in part and remanded with directions.
NOTES
[1] Singletary seems to assume that the recipient was made aware of the mistake by the demand.
[2] Because of our view that Singletary is controlling, we need not decide whether we would independently agree with the merits of this position. It should be noted, however, that the reluctance of the courts to authorize what would be in effect the creation of an involuntary debtor-creditor relationship may provide a very good basis for distinguishing the erroneous payment situation from others to which the Argonaut rule applies. This may be why, while the trustees attempt to distinguish the out-of-state authorities relied upon by Jackson, e.g., Sykes v. United States, 392 F.2d 735 (8th Cir.1968); United States v. 339.77 Acres of Land, 420 F.2d 324 (8th Cir.1970), they have cited no case from any jurisdiction which actually holds, as they contend, that interest runs from the date of even a mutually mistaken overpayment.
[3] We take solace in noting that, if we have misinterpreted the scope and effect of Argonaut, the supreme court will find us in conflict with that decision so as to permit review under Art. V. § 3(b)(3), Fla. Const.
[4] See supra note 1.